RANDY SMITH, Plaintiff-Appellant, v. BLACK AND DECKER (U.S.), INC., Defendant-Appellee.

Third District    No. 3—94—0553

Opinion filed May 26, 1995.

452

James P. Stevenson, Laird M. Ozmon, and Douglas J. Simpson, all of Laird M. Ozman, Ltd., of Joliet, for appellant.

James K. Horstman, Barry L. Kroll, Michael D. Huber, and C. Barry Montgomery, all of Williams & Montgomery, Ltd., of Chicago, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Plaintiff, Randy Smith, brought a product liability action against defendant, Black & Decker (U.S.), Inc., seeking damages for injuries occasioned by plaintiff's use of a power miter saw manufactured by defendant. Plaintiff alleged that the near complete amputation of his left hand was the proximate result of defendant's failure to place a guard on the lower right side of the saw blade. The case was submitted to a jury, which returned a verdict in favor of the defendant. The trial court denied plaintiff's post-trial motion for judgment not withstanding the verdict, or alternatively, for a new trial, and entered judgment on the verdict.

On appeal, plaintiff maintains that the trial court committed reversible error in: (1) granting defendant's motion *in limine* to bar evidence of a post-manufacture, but pre-injury design modification that added a lower right blade guard; (2) granting defendant's motion *in limine* to bar evidence of correspondence between defendant's witness and Underwriters Laboratories (UL) from September 1978 through May 1981; and (3) barring testimony of two plaintiff's witnesses as a sanction for failure to disclose timely their identity in response to discovery requests. We affirm.

At trial, the plaintiff testified he was using a Model 7717 power miter saw, manufactured by the defendant, to cut and install baseboard in his basement. The saw was in the right miter position and plaintiff was cutting the baseboard with an inside right miter cut. The saw was placed on the floor in a 45 degree right miter angle, and the plaintiff knelt in front of the saw with his right hand on the saw's trigger and his left hand on the work piece, supporting it against the fence of the saw. Plaintiff further testified that after he completed a cut, he released the trigger and stood up simultaneously. He then reached down with his right hand to grasp the piece of wood he had just cut, when his left hand moved into the unguarded lower right saw blade.

Plaintiff was transported to a local hospital by ambulance and air-lifted to Loyola University Medical Center, Maywood, Illinois. The plaintiff was examined by Dr. Kenneth L. Schiffman, a medical doctor specializing in orthopedic surgery and hand surgery. Dr. Schiffman determined, after consultation with Dr. Hatem Galal, a plastic surgeon specializing in reconstructive hand surgery, that it was not feasible to salvage the hand and it was amputated.

Dr. Schiffman testified that the plaintiff suffered extensive damage to the wrist, including the complete severing of wrist bones, arteries and tendons. A bridge of skin, located along the back of the wrist and running to the small finger, was all that remained intact. Dr. Schiffman opined that the plaintiff's injuries were consistent with a lateral motion of the hand into a blade, which caused the wrist to be pulled into the blade. On cross-examination, Dr. Schiffman agreed that the injuries were also consistent with the saw having been brought down upon the radial aspect of the wrist.

Donald Clark, a registered professional engineer who had been defendant's project engineer for the Model 7717 power miter saw when it was manufactured in 1978, testified for the plaintiff. Clark testified that he saw nothing unforeseeable about the way the plaintiff utilized the saw and that plaintiff's injury was foreseeable. He further opined that the Model 7717 saw was unreasonably dangerous due to the fact that the saw lacked a guard on the lower right side, and the absence of that guard was the proximate cause of the plaintiff's injury.

During Clark's testimony, the jury was shown a power miter saw that employed a blade guard which, in his opinion, could have prevented plaintiff's injury. Using this saw as a demonstrative exhibit, Clark demonstrated to the jury how he believed the presence of a lower right blade guard would have prevented plaintiff's injury.

On cross-examination, Clark testified that the plaintiff had told

him that the accident happened when he was making a 45 degree right miter cut holding a piece of wood at the right side of the blade with his left hand. When he had cut only part of the way through the wood, the blade made contact with the back of his hand drawing his wrist into the blade.

Defendant argued this testimony was consistent with its theory that the plaintiff had actually brought the saw blade down onto his wrist while the saw was still under power. It was uncontroverted that if plaintiff had brought the saw down onto his wrist while the saw was still under power, the presence of a lower right blade guard would not have prevented the injury.

Plaintiff called Daniel M. Montague, defendant's safety assurance manager since 1987, as an adverse witness. Montague testified that he had given testimony on behalf of the defendant in prior trials involving claims similar to the one brought by plaintiff, including lawsuits filed by Robert Stukel and Jerry Ross. Montague admitted to being aware of five other lawsuits involving a hand contacting the unguarded blade from the right side.

Plaintiff also presented the testimony of Stanley B. Kalin, a safety engineer with a bachelor of science degree in mechanical engineering. Kalin testified that, in his opinion, the saw was unreasonably dangerous in that the lower right portion of the blade was unguarded. He further opined that the lack of a guard was the cause of the plaintiff's injury.

Defendant presented testimony from a paramedic and an ambulance attendant, each of whom testified that the plaintiff told them that he had accidently brought the saw blade down onto his hand while cutting a piece of wood.

Robert Knourek, associate managing engineer of UL, testified that, at the time of manufacture, UL investigated the product and found it to be safe for use by the public. Knourek testified that, in his opinion, the saw was not unreasonably dangerous in that it met UL standards at the time of its manufacture. He did note that in 1982, four years after the saw was manufactured, UL standards were changed to require a lower right blade guard, and all saws manufactured by the defendant after that date did have the additional blade guard.

Plaintiff sought to introduce as substantive evidence, or in the alternative for impeachment purposes, letters written by Knourek from September 1978 to May 1981 regarding proposed changes to the UL standards to require a double-sided blade guard on all saws similar to the Model 7717. The trial judge ruled the letters to be inadmissible.

James McElhaney, professor and chairman of the department of biomedical engineering at Duke University and professor of experimental orthopedics in Duke's department of surgery, also testified for the defendant. McElhaney testified that the automatic blade brake on the Model 7717 was a significant safety feature. The blade brake brought the blade to a complete stop within 1 to 1.5 seconds after the power trigger was released. He further testified that within one quarter of a second after release of the trigger, the brake reduced the speed of the blade to such a degree that the blade might cause skin lacerations, but would not do significant damage to bone structures.

McElhaney opined that the plaintiff received the injury when he brought the saw blade down onto his wrist while the saw was still under power. In addition, Dr. Charles Carroll, an orthopedic surgeon specializing in orthopedic hand surgery, testified for the defendant and stated his opinion that the plaintiff brought the saw blade down onto his wrist while the saw was still under power.

On rebuttal, plaintiff presented the testimony of Dr. Galal, who was present in the operating room when the amputation was performed. Dr. Galal opined that the injury occurred when the saw was in the upright position and not under power.

Plaintiff also offered rebuttal testimony from Dr. Mark G. Strauss, assistant professor of biomechanical engineering at the University of Illinois at Urbana, who testified to his opinion that the accident could have happened as the plaintiff described.

During jury deliberations, the jury foreman sent a note to the trial judge requesting that the saw equipped with a lower right side blade guard, the saw used by plaintiff's witness as demonstrative evidence, be sent to the jury room. The trial judge denied this request. The jury returned a verdict in favor of the defendant.

Recovery from a manufacturer under a theory of strict product liability in tort requires the plaintiff to prove that: (1) his injuries resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; (3) the condition existed at the time the product left the manufacturer's control; and (4) the condition was the proximate cause of the injury. (*Aetna Insurance Co. v. Amilio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863.) On appeal, plaintiff contends that the trial court's evidentiary rulings prevented him from proving the latter element, proximate causation.

We note that evidentiary rulings rest within the sound discretion of the trial court, and absent an abuse of discretion resulting in prejudice to the party objecting, those rulings will not be disturbed on appeal. *Brandt v. Uptown National Bank* (1991), 212 Ill. App. 3d 621.

Plaintiff first maintains that the trial court committed reversible

error when it granted the defendant's motion to exclude evidence of post-manufacture, but pre-injury modifications. Plaintiff concedes that exclusion of evidence of post-manufacture, but pre-injury design modification may be appropriate in negligence actions, but not product liability actions.

It is well settled that evidence of *post-injury* remedial safety measures generally is not admissible in either negligence or product liability actions. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1 (negligence actions); *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814 (product liability actions).) Evidence of such product modifications generally is admissible, with limited exceptions, only to prove feasibility of alternative design. *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313.

The policy consideration behind this general rule is well taken. If such remedial measures could be used by a plaintiff as evidence of negligence or admission that a product was inherently dangerous, a disincentive for manufacturers to improve their product would exist. Importantly, the incentive to adopt safety measures likely would be reduced if subsequent modifications could be used as evidence against the manufacturer "regardless of whether the basis of [the manufacturer's] liability is negligence or the inherent dangerousness of its product." *Davis*, 167 Ill. App. 3d at 822.

We recognize that other jurisdictions have held that policy concerns over safety improvement may be offset by other considerations, such as reduction of future tort liability and customer demand for greater safety features, when the safety modifications are made prior to occurrence of the injury. (See *doCanto v. Ametek, Inc.* (1975), 367 Mass. 776, 782-83, 328 N.E.2d 873, 876 (admitting evidence of pre-accident remedial measures to feasibility and the manufacturer's awareness of risk).) We note, however, as the court did in *Davis*, that the Illinois rule in this regard is comparable to Rule 407 of the Federal Rules of Evidence (Fed. R. Evid. 407), which the Seventh Circuit Court of Appeals found, based upon policy concerns over disincentives to make safety improvements, bars evidence of subsequent modifications in product liability actions except where the evidence is offered to prove ownership, control, feasibility of precautionary measures, if controverted, or impeachment. *Flaminio v. Honda Motor Co.* (7th Cir. 1984), 733 F.2d 463, 468.

Likewise, the same policy consideration has been found in applying the same exclusionary rule with regard to *pre-injury*, but post-manufacture remedial measures in *negligence* actions. (*Carrizales v. Rheem Manufacturing Co.* (1991), 226 Ill. App. 3d 20.) In *Carrizales*, the court upheld the trial court's ruling barring evidence that the

manufacturer of a water heater placed warning labels on its heaters after the date of manufacture, but before the date of injury, with respect to all issues except feasibility of alternative design. The court noted that because manufacturers mass produce items used commonly and extensively, admitting evidence of pre-injury safety modifications would discourage improving the safety of such products. However, the *Carrizales* court noted that the cause of action involved negligence only and therefore declined to determine whether its holding should apply in product liability actions.

■ We are now asked to determine whether the exclusion of post-manufacture, but pre-injury safety modifications for purposes other than evidence of feasibility of alternative design, as articulated by the court in *Carrizales*, should apply to product liability actions as well as negligence actions. We hold that it does. In doing so, we find the same policy consideration, *i.e.*, the potential chilling effect on safety improvements, present in product liability actions as in negligence actions regardless of whether the modifications were pre-injury or post-injury. See *Davis*, 167 Ill. App. 3d 814.

In so holding, we note *Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, cited by the plaintiff, is clearly distinguishable. In *Collins*, defendant manufacturer retained an expert who advised the defendant that its product was defective. Pursuant to that advice, defendant made design modifications, and production from that point on incorporated those design changes. However, the defendant continued to sell defective products from inventory stockpile after it had implemented the safety modifications. Plaintiff was allowed to introduce both the pre-injury modifications and the defendant's actions in continuing to sell unsafe products from inventory as evidence of willful and wanton conduct and that the manufacturer acted with conscious disregard for the safety of others. (*Collins*, 126 Ill. App. 3d at 251.) Our supreme court analyzing the *Collins* decision in *Schaffner* was critical of this apparent limited exception to the general rule excluding evidence of subsequent modifications. *Schaffner*, 129 Ill. 2d at 15.

●2 Assuming, *arguendo*, we were to hold that the trial court erred in granting defendant's motion, the ruling did not prejudice the plaintiff. The plaintiff not only presented testimonial evidence to support his theory that the Model 7717 saw was dangerous and defective because it lacked a lower right blade guard, he showed the jury what a similar saw with a double guard looked like and demonstrated how that guard allegedly would have prevented the plaintiff's injury.

Further, the jury was informed of the 1982 change in UL standards requiring a lower right blade guard and was told that the de-

fendant subsequently manufactured saws which conformed to the new standard. Plaintiff's experts, Kalin, Clark, and Strauss, each testified that, in their opinion, the absence of the lower right blade guard rendered the saw unreasonably dangerous and the presence of such a guard would have prevented the injury.

It is difficult to determine what additional evidence could have gone to the jury had the trial judge not granted defendant's motion to exclude evidence of pre-injury safety modifications. Plaintiff maintains that this evidence was necessary to prove causation, but does not explain how the excluded evidence would have proven that the lack of a lower right blade guard caused the plaintiff's injuries, particularly since all experts agreed that if the plaintiff had brought the saw down upon his hand while it was still under power, the presence of the lower right blade guard would not have prevented the injuries.

We note plaintiff did not make an offer of proof. Generally, an offer of proof is necessary to preserve a question for review where the trial court excludes evidence or the testimony of a witness on a particular matter. (*Federal Mutual Insurance Co. v. Pense* (1980), 84 Ill. App. 3d 313, 318.) An offer of proof also may be necessary to assess the admissibility of the proffered evidence. (*Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 412.) However, it is recognized that a formal offer of proof is not necessary if the nature of the excluded evidence is obvious. (*Allen & Korkowski & Associates v. Pettit* (1982), 108 Ill. App. 3d 384, 388.) While an offer of proof may not be required in order to preserve the issue for review in this case, absent such an offer of proof we are not able to conclude that plaintiff was prejudiced by the trial court's ruling.

Plaintiff next contends that the trial court erred in barring the use of Knourek's correspondence with UL between September 1978 and May 1981 regarding UL standards for power saws. This correspondence culminated in new UL standards issued in 1982, which required lower right blade guards on power miter saws. It is undisputed that the saw used by plaintiff complied with all applicable UL standards when it was manufactured.

The trial court excluded this evidence on the basis of relevancy. Relevancy is established when evidence offered tends to prove a fact in controversy or renders a matter in dispute more or less probable. (*Marut v. Costello* (1965), 34 Ill. 2d 125.) The determination of what is or is not relevant rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Chapman v. Brokaw* (1992), 225 Ill. App. 3d 662.

■ While an unreasonably dangerous design defect can be demon-

strated by evidence that the product failed to conform to accepted design standards at the time of manufacture (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364), the trial court properly determined that testimony concerning the 1982 UL standards was irrelevant since the saw in question was manufactured in 1978. We find the trial court did not abuse its discretion in ruling that post-manufacture changes in the UL standards were not relevant.

◼ Plaintiff also contends that the trial court erred in not allowing him to use the correspondence to impeach Knourek's testimony that, in his opinion, the saw was not unreasonably dangerous at the time it was manufactured. To be used for impeachment, a witness' prior statement must be materially inconsistent with his trial testimony; the test is whether the statement has a reasonable tendency to discredit the witness' direct testimony on a material matter. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 551.) Whether to allow the admission of evidence for impeachment purposes is within the trial court's discretion, and the reviewing court will not disturb that decision absent an abuse of discretion. (*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 205.) In the matter *sub judice*, the trial court determined that the correspondence would not discredit the witness on a material matter. Nowhere in the correspondence did Knourek opine that the saw was inherently dangerous. The correspondence concerned development of standards for making radial saws safer and therefore was not material to Knourek's direct testimony. We cannot say that the trial judge abused his discretion in not allowing the plaintiff to use the correspondence to impeach Knourek.

We note that if the trial court determined that Knourek's correspondence to Black & Decker between September 1978 and May 1981 was material for the purposes of impeachment, it could have been admitted into evidence. Although no Illinois cases discuss the admission of evidence concerning subsequent remedial measures for impeachment purposes, Federal Rule of Evidence 407 (Fed. R. Evid. 407) and cases from other jurisdictions support the practice. See *Spurr v. LaSalle Construction Co.* (7th Cir. 1967), 385 F.2d 322, 327; *Blythe v. Sears, Roebuck & Co.* (Ala. 1991), 586 So. 2d 861, 863-64; *Agostinho v. Fairbanks Clinic Partnership* (Alaska 1991), 821 P.2d 714, 716; *Hopkins v. Duo-Fast Corp.* (1993), 123 Idaho 205, 212, 846 P. 2d 207, 214; *Benson v. Tennessee Valley Electric Cooperative* (Tenn. Ct. App. 1993), 868 S.W.2d 630, 642.

Lastly, plaintiff contends that the trial court's exclusion of Ross and Stukel as witnesses was prejudicial error requiring reversal. Ross and Stukel each had sustained injuries similar to the plaintiff's

injuries, *i.e.*, amputation of the left hand, while using the same model saw manufactured by the defendant. Each had filed separate lawsuits against the defendant, and each had received a jury verdict in his favor awarding damages in excess of $2 million. Ross and Stukel were not identified by the plaintiff as individuals having relevant knowledge in response to interrogatories propounded by the defendant six months prior to trial, nor were they identified in response to supplemental interrogatories served approximately three months before trial. Although transcripts of portions of their testimony in their trials were appended to a motion for partial summary judgment, their identity as trial witnesses was only disclosed approximately four days before trial.

The record clearly establishes that Ross and Stukel were barred as witnesses because the plaintiff failed to disclose them in response to the defendant's interrogatories. Discovery sanctions are a matter resting within the sound discretion of the trial court and will not be interfered with on appeal unless a manifest abuse of discretion is affirmatively and clearly shown. (*Synder v. Lowrey* (1986), 141 Ill. App. 3d 30.) Further, Supreme Court Rule 219 (134 Ill. 2d R. 219) authorizes the trial court to exclude otherwise admissible evidence as a discovery sanction.

The factors a trial court must use in determining whether exclusion of a witness is an appropriate sanction are (1) surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the witness' testimony; (4) the diligence of the adverse party; (5) whether objection to the witness' testimony was timely; and (6) the good faith of the party calling the witness. *Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305.

■ In applying the above, we cannot say that the trial court abused its discretion. Our review of the record indicates that the trial court had sufficient evidence to support a finding of diligence on the part of the defendant in that it had propounded interrogatories and supplemental interrogatories in order to discover the identity of all potential witnesses. Likewise, the record indicates a timely objection to the proposed testimony. Further, it is possible for the trial court to find a lack of good faith in the failure of the plaintiff to disclose these witnesses until the eve of trial.

Moreover, we again note that an offer of proof was not made, which makes it difficult for this court to determine the nature of the witnesses' testimony or the prejudicial effect of that testimony. Generally, an offer of proof is necessary to assess the prejudice resulting from the exclusion of proffered evidence. (*Yassim v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1066.) Without such an

offer of proof, this court may not speculate as to what the excluded testimony might have been. Plaintiff asserts that the testimony of Ross and Stukel would have assisted him in proving causation, but he does not indicate how this testimony would have proven causation.

Assuming, *arguendo*, we were to find error in the trial court's barring the testimony of Ross and Stukel as a sanction for failure to comply with discovery, we would find the ruling was harmless error. The jury received evidence of the Ross and Stukel claims against the defendant through the testimony of Montague. Therefore, the nature of the excluded testimony may be viewed as cumulative.

Although barring the testimony of these witnesses was a severe sanction, the record overall does not indicate the trial judge abused his discretion in barring the testimony.

The judgment of the circuit court is affirmed.

Affirmed.

LYTTON and SLATER, JJ., concur.