LOREN A. BOYCE *et al.*, Plaintiffs-Appellants, v. THEODORE J. RISCH *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—92—1257

Opinion filed November 15, 1995.

Jeffrey M. Goldberg and Stephan D. Blandin, both of Chicago, for appellants.

Ian J. Lochridge, of Chicago, for appellee Theodore J. Risch.

Thomas P. Marnell, of Chicago, for appellee Leo S. Deutsch, Inc.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs Loren Boyce (Loren) and Marleen Boyce (Marleen) filed this action against defendants, Theodore J. Risch and Leo S. Deutsch, Inc. (Deutsch), for personal injuries sustained on October 19, 1984. Plaintiffs' fourth amended complaint alleged the following three counts: (1) that Risch violated provisions of the Illinois Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*); (2) negligence on the part of Risch and Deutsch; and (3) Marleen's loss of consortium. The case proceeded to trial, and the jury returned a verdict in favor of defendants upon which the trial court entered judgment. Plaintiffs now appeal from the judgment pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we affirm.

## FACTUAL BACKGROUND

The following relevant facts were presented at trial. On October 19, 1984, Loren was employed by Mortenson Roofing Company (hereinafter Mortenson), a company in the business of installing roofs. Risch was a homeowner who was adding a garage to his property. Risch contacted Mortenson and entered into a contract whereby Mortenson provided roofing services. Loren and his brother Fred Boyce (Fred) were to work on the garage.

Prior to hiring Mortenson to install the garage roof, Risch had employed Deutsch to lay the foundation for the garage. Deutsch laid the foundation and, afterwards, sprayed the concrete with a sealant in order for it to cure properly. The sealant, which created an invisible impenetrable film barrier, would help retain the concrete's moisture and prevent it from cracking by drying too fast. The installation of the new concrete garage floor and driveway had been completed by Deutsch before October 1, 1984.

Loren and Fred testified that they began working, side-by-side, on Risch's garage on October 19, 1984, 18 days after Deutsch completed its work. Loren and Fred testified that they had begun their roofing work on the rear or south side of the garage first and then moved to its east side. Prior to working on the north side of the garage, the men had been placing their ladders on the soil. However, upon moving to the north side, Loren positioned his 16-foot wooden extension ladder on the concrete driveway containing the sealant. Loren was standing on his ladder, and without warning, his ladder slipped straight out from underneath him, causing him to fall onto the driveway. Loren was taken to the hospital where he was treated for a comminuted fracture of his distal humerus and distal tibia. Plaintiff testified that it has been difficult to work due to his injuries.

Loren testified that he had not received any warning of nor had knowledge of the possible dangers of the concrete sealant. He further testified that when he climbed the ladder, he was about waist-high with the gutter line and that he positioned the base of the ladder approximately three feet from the gutter line. Moreover, he testified that the ladder did not have safety shoes nor did Mortenson provide them. It is plaintiffs' theory that the concrete sealant had caused the driveway to become slippery, even though neither Loren nor Fred noticed the slipperiness.

At trial, Lee Hamm testified for plaintiffs. Hamm testified that he was a salesperson for the construction supplier who sold the W.R. Meadows CS-309 concrete sealant to Deutsch, although he had not begun working for the supplier until three years after the sale of the product in this case. Hamm testified that he has been acquainted with the product for 13 years, attended a seminar on the product and used it on one occasion. Hamm further testified that the sealant is an acrylic-based product designed to retain sufficient moisture to prevent concrete from drying too quickly and cracking. In addition, Hamm testified that the sealant does not create a sheen or shine on the concrete surface nor does it change the texture and slip resistance of the concrete.

Imants Lukis, Mortenson's superintendent estimator for 32 years, testified at trial that his responsibilities for Mortenson included giving advice on projects or going to jobsites to work with the roofers. Lukis further testified that he used the rubber safety feet for ladders and that Mortenson supplied them to its employees. Lukis recollected that he had a conversation with Fred, where he said Loren had climbed up too high and that his ladder did not have the rubber safety feet. Fred denied this conversation.

## ISSUES PRESENTED

The issues on appeal are whether the trial court erred: (1) in permitting the testimony of Lukis to impeach Fred; (2) in prohibiting Hamm from testifying to the properties of the sealant; and (3) in prohibiting plaintiffs' counsel from asking Risch whether he retained the authority to stop work on the project.

## OPINION

Plaintiffs' first contention is that defendants failed to lay an adequate foundation in order to impeach plaintiffs' witness by a prior inconsistent statement. Plaintiffs point to the fact that Fred was not directed to the time, place, and circumstance of the statement. Defendants respond that the trial court properly admitted Lukis'

testimony to impeach Fred. The decision to allow the admission of evidence for impeachment purposes is within the trial court's sound discretion. (*Smith v. Black & Decker (U.S.), Inc.* (1995), 272 Ill. App. 3d 451, 459, 650 N.E.2d 1108.) A reviewing court will not disturb that decision absent an abuse of discretion. *Smith*, 272 Ill. App. 3d at 459.

Earlier in the trial, defense counsel cross-examined Fred as to whether he remembered conversing with anyone from Mortenson about the accident. Fred said he did not. Defense counsel further asked Fred if he knew Lukis, to which Fred answered yes. However, when counsel questioned Fred as to whether he had ever discussed Loren's accident with Lukis, Fred said he did not.

Defense counsel subsequently called Lukis and asked him if Fred discussed Loren's accident. Plaintiffs' counsel objected to the question on the basis of hearsay. However, after a sidebar, the trial judge overruled the objection but noted plaintiffs' request for a mistrial. Lukis recounted that the first thing Fred mentioned was that "the rubber feet were not on the ladder and it just slipped out real fast and came down suddenly. [A]nother thing he mentioned was that Loren Boyce had gone up very high, almost above the gutter line, which would tend to make the—make it more likely for the bottom to kick out." In addition, Lukis testified that Fred had mentioned a teeter-totter effect, where if the weight is on top of the ladder, the bottom will kick out.

■ Proper foundation should be established during cross-examination. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.) The foundation is laid by directing the attention of a witness to the time, place, and circumstances of the statement and its substance. (*People v. Bradford* (1985), 106 Ill. 2d 492, 478 N.E.2d 1341; *People v. Hood* (1992), 229 Ill. App. 3d 202, 593 N.E.2d 805.) The purpose of the foundation is to provide the witness with an opportunity to deny, correct, or explain any prior inconsistent statement as well as avoid unfair surprise. (*People v. Cobb* (1983), 97 Ill. 2d 465, 479, 455 N.E.2d 31, 37.) In addition, a good-faith basis is required on the part of examining counsel regarding a prior inconsistent statement: innuendoes or insinuations of a nonexistent statement are improper. *People v. Fiorita* (1930), 339 Ill. 78, 170 N.E. 690; *Sutton v. Overcash* (1993), 251 Ill. App. 3d 737, 623 N.E.2d 820.

■ The Illinois Supreme Court has held that there is sufficient foundation for a witness if he was given the substance of a statement and the identity of the person to whom such inconsistent statement was made, regardless of the absence of a particular recitation of time and place of the inconsistent statement. (*People v. Cobb* (1983), 97 Ill. 2d 465, 480, 455 N.E.2d 31.) Here, defense counsel identified Lukis as

the man to whom Fred made the statement. Moreover, counsel identified the subject matter of the conversation as being Loren's accident. We believe Fred was adequately alerted to his prior inconsistent statement. There was no unfair surprise and he was given an opportunity to tell the court whether such a conversation existed. Moreover, we find that defense counsel had a good-faith basis in cross-examining Fred on the alleged conversation. Defense counsel was not insinuating a nonexistent statement, since Lukis testified that there was such a conversation. Accordingly, we find there was no abuse in the trial court's discretion in allowing the impeachment testimony due to the sufficiency of the foundation.

The next issue we address is plaintiffs' contention that the trial court erred by prohibiting Hamm from testifying as to the properties of the concrete sealant. The trial court ruled that Hamm was an expert witness within the meaning of Supreme Court Rule 220(a) (134 Ill. 2d R. 220(a)) and as such had to have been disclosed to defendants within 60 days before the commencement of trial pursuant to Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)). This was not done. Consequently, Hamm was barred from testifying. Plaintiffs argue that Hamm was not retained as a Rule 220 expert witness, but rather a witness conveying factual information. We disagree.

Supreme Court Rule 220(a) (134 Ill. 2d R. 220(a)) defines an expert witness as "[one] who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." Expert testimony is not restricted to scientific or technical areas, but rather includes all areas of specialized knowledge. The testimony of a qualified witness only needs to assist the trier of fact. (*Chem-Pac, Inc. v. Simborg* (1986), 145 Ill. App. 3d 520, 495 N.E.2d 1124.) If a party has an expert witness, he must be disclosed pursuant to Rule 220(b) (134 Ill. 2d R. 220(b)) within 90 days after the substance of his opinion is known, the first pretrial conference, an agreed-upon schedule, or no later than 60 days before the commencement of trial. 134 Ill. 2d R. 220(b).

The record indicates that over the past 15 years, Hamm has familiarized himself with the sealant, as well as recommended, studied, sold and used it. Surely, Hamm's specialized knowledge of this product was beyond the ken of the average person. Moreover, Hamm had no personal knowledge of how the sealant was applied in this instance nor did he witness any of the events at issue in the case. All he could testify to were the sealant's properties and propensities. Therefore, he clearly was an expert within the meaning of Rule 220

who had to be disclosed before 60 days prior to trial regardless of the fact that his knowledge was not gained in anticipation of litigation. Accordingly, the trial judge did not abuse his discretion in prohibiting the testimony.

■ Still to be considered is whether the trial court erred in prohibiting plaintiff from asking Risch if he retained the authority to stop work on the project. Plaintiffs maintain that this prejudiced their case since they could not establish that Risch was "in charge of" the project within the meaning of the Act. Plaintiffs argue that Risch was in charge of the project and served as his own general contractor. Defendants objected to this line of questioning as calling for legal conclusions. A trial court's determination as to the admissibility of evidence lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. *People v. Crisp* (1992), 242 Ill. App. 3d 652, 659, 609 N.E.2d 740.

Under the Act, plaintiffs must establish that Risch was a "contractor *** or other person having charge of the *** construction *** of any building" and that he committed a wilful violation. (Ill. Rev. Stat. 1983, ch. 48, par. 69.) The appellate court in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 445 N.E.2d 39, enumerated various factors to consider in determining whether one is "in charge of" a project. The factors examine whether the totality of circumstances establishes that a party had charge of the work. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 218, 430 N.E.2d 699.) One of these factors is whether a defendant "had the right to stop the work." (*Zukauskas v. Bruning* (1989), 179 Ill. App. 3d 657, 662.) Determining who was in charge of the work is a fact question for the jury. *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 9, 415 N.E.2d 599.

After careful review of the record, we see that the trial court gave plaintiffs ample opportunity to rephrase the questions of whether Risch had authority to stop the work. Plaintiffs were permitted to ask: whether he gave anybody else on the job the right to stop the work; whether he hired the architect, bricklayers, subcontractors, carpenters, roof workers, and electricians; and whether Risch made any material purchases or instructed the tradesmen about their work. Thus, we find plaintiffs' contention without merit.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and CERDA, JJ., concur.