No. 3--96--0017

_________________________________________________________________

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                 A.D. 1996

_________________________________________________________________

VINCENT L. HERMAN,              )   Appeal from the Circuit Court

                                )   of the 12th Judicial Circuit,

     Plaintiff-Appellee,        )   Will County, Illinois

                                )

        v.                      )   No. 91--L--18465

                                )

WILL TOWNSHIP, a municipal      )

corporation,                    )   Honorable

                                )   Edwin B. Grabiec,

     Defendant-Appellant.       )   Judge Presiding

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

     The defendant, Will Township (Township), appeals from a

judgment entered in favor of the plaintiff, Vincent Herman.  A jury

awarded the plaintiff damages for injuries he suffered in an

accident on a gravel road which had recently been improved by the

Township.  

     On appeal, the Township first argues that the judgment should

be reversed.  The Township contends that it was immune from

liability pursuant to sections 2-109, 2-201 and 3-103(a) of the

Local Government and Governmental Employees Tort Immunity Act (Tort

Immunity Act) (745 ILCS 10/2-109, 2-201, 3-103(a) (West 1994)).  In

the alternative, the Township argues that it is entitled to a new

trial because: (1) the plaintiff was allowed to introduce evidence

that the Township did not post warning signs; (2) the plaintiff was

allowed to introduce a photograph of a different gravel road; (3)

the trial court erroneously gave a missing witness instruction; and

(4) the trial court allowed the plaintiff's expert, Paul Box, to

render an opinion concerning the condition of the gravel road.

     After carefully reviewing the record, we conclude that the 

Township was not immune from liability pursuant to the Tort

Immunity Act.  We further conclude that the Township is not

entitled to a new trial.  As a result, we affirm.

                                   FACTS

     On July 25, 1991, the 65-year-old plaintiff was driving his

Honda Elite 250 (moped) west on Eagle Lake Road.  He had never

driven on Eagle Lake Road before, and, when he started driving on

the road, it was paved.  Because it was an unposted rural road, the

speed limit was 55 miles per hour.  The plaintiff was traveling

about 45 miles per hour when he saw a rise in the road and slowed

down to 42 or 43 miles per hour.  The plaintiff saw a color change

in the road but could not tell whether the pavement turned into a

gravel road until he was about 150 feet from where the pavement

changed to gravel.  After he crossed Crawford Road, the plaintiff

drove onto the north lane of the gravel road.  He tried braking,

but his front wheel sunk into the gravel and his moped went down. 

As a consequence, the plaintiff suffered five broken ribs, a

punctured lung, a fractured collar bone, a fractured scapula and a

herniated disc in his neck.  Moreover, he had to have exploratory

surgery because of internal bleeding, and his spleen was removed.

     On December 31, 1991, the plaintiff filed a complaint against

Will Township.  The plaintiff alleged that the Township made

improvements to Eagle Lake Road and caused the road to become

unsafe by "leaving up to four (4) inches of uncompacted, coarse,

loose gravel on the roadway."  The Township attempted to have the

complaint dismissed based upon its claim of tort immunity.  The

trial court denied the motion.  The Township also filed affirmative

defenses, again claiming tort immunity and also claiming the

plaintiff was guilty of contributory or comparative negligence

because he failed to keep a proper lookout and failed to reduce

speed to avoid the accident.

     A trial took place in October 1994.  On October 19, 1994, the

jury returned a verdict in which it found for the plaintiff but

awarded no damages.  The trial court later granted the plaintiff's

motion for a new trial.  Will Township filed a petition for leave

to appeal the new trial order.  This court denied the petition.  

     The second trial began on July 24, 1995.  Ronald Werner, the

Township's road commissioner, testified that Eagle Lake Road was

paved east of Crawford Road and was gravel west of Crawford Road. 

During the spring of 1991, Township employees began improving a

one-mile section of the gravel road west of Crawford Road and east

of Will Center Road.  The project was approved by the Illinois

Department of Transportation (IDOT) and was completed in accordance

with IDOT specifications.  The specifications did not include any

requirements for compaction of the gravel.  

     The Township improved the road by widening it from 17 feet to

20 feet and putting on a new 10-inch layer of gravel.  Township

employees laid the new gravel in 3 to 3½ inch layers using two

gravel trucks.  The project specifications required the Township to

work from the end closest to the gravel quarry, so the employees

started laying down gravel at Will Center Road.  They began at the

south lane of the road.  Each layer was compacted by driving the

gravel trucks over it.  Also, a grader was used to level and

compact each layer.  The project was completed on July 21, 1991,

four days prior to the plaintiff's accident.  The north lane just

west of Crawford Road was completed last.  Werner admitted the

trucks did not drive over the final layers as many times as the

first layers.  He said that it was possible there was as much as 3½

inches of loose gravel on the north lane of the road.  However, he

testified that when he drove over the road on July 21, 1991, he

thought it was sufficiently compacted.

     Three experts testified for the plaintiff.  Ronald Palmieri is

a licensed engineer who specialized in pavement evaluation, design

and construction.  He examined the road on August 8, 1991. 

Palmieri tested a spot on the north side of the road which he

stated was representative of the first 50 feet west of Crawford

Road.  He testified that most of this section of the road had four

inches of loose gravel, although the loose gravel ranged from one

to four inches.  Palmieri testified that a gravel road must be

adequately compacted so that drivers can have a stable surface to

drive over smoothly.  He testified that, in his opinion, the road

in question was not adequately compacted.  As a consequence,

Palmieri found the road to be unstable and unsafe.

     Paul Box, a traffic engineering consultant, went to the scene

on August 16, 1991.  He testified that he saw several inches of

loose gravel on the road.  He said the road had a "very treacherous

surface."   He testified that it would be very easy to skid out of

control because of the loose gravel on the road.  

     Gerald Dresselhouse, a civil engineer, testified that he was

a consultant and had previously been a county road commissioner in

Michigan.  He went to observe the scene of the accident in April

1994.  He testified that, based upon his review of various

documents and photographs, the surface by the intersection with

Crawford Road had essentially zero compaction at the top one to

four inches of the road.  In his opinion, he found the road to be

unreasonably dangerous.  

     A photograph taken by Dresselhouse in April 1994 was shown to

the jury over the Township's objection.  Dresselhouse testified it

was "an enlargement of a photograph that [he] had taken of a gravel

road in the area of our accident site here that depicts what an

adequately compacted and adequately maintained surface should look

like."  He said the photograph showed a different portion of Eagle

Lake Road.   

     All three experts were allowed to testify that there were no

warning signs posted at the site of the accident.  They all

testified that, without any warning signs, a driver unfamiliar with

the road could not observe that the pavement turned into gravel

until it was too late to react to avoid an accident.  Each time

this type of testimony was presented by the plaintiff, the trial

court gave a limiting instruction that the evidence was only being

admitted on the issue of the plaintiff's own negligence and not on

the issue of the Township's negligence.

     On August 1, 1995, the jury returned a verdict in favor of the

plaintiff, set damages at $509,000, and determined that the

plaintiff was 40% negligent.  Judgment was entered on the verdict

in the sum of $305,400.  Following the denial of its post-trial

motion, the Township filed a timely notice of appeal.

                               TORT IMMUNITY

     The Township points out that "no statute, code, rule,

regulation or standard in Illinois required a specific level of

compaction" on the road at issue.  The Township contends that it

had no duty to compact the gravel and the amount of compaction was

a discretionary act on the part of Werner, the road commissioner. 

The Township claims it is entitled to immunity for Werner's

discretionary actions under sections 2-109 and 2-201 of the Tort

Immunity Act.  It also argues that it is entitled to immunity under

section 3-103 of the Tort Immunity Act because the plan for

improving the road was approved by IDOT.  We disagree with the

Township's position.

     Section 3-102(a) of the Tort Immunity Act codifies the common

law duty of a local public body to maintain its property, including

roads, in a reasonably safe condition.  (745 ILCS 3-102(a) (West

1994); Wagner v. City of Chicago, 166 Ill. 2d 144, 152, 651 N.E.2d

1120, 1124 (1995).  Numerous cases, many of which have been cited

and relied upon by the Township, hold that this common law duty to

maintain does not include a duty to undertake improvements to

public property.  See, e.g., Kennell v. Clayton Township, 239 Ill.

App. 3d 634, 640-42, 606 N.E.2d 812, 816-18 (1992); Havens v.

Harris Township, 175 Ill. App. 3d 768, 771, 530 N.E.2d 284, 285

(1988); Ross v. City of Chicago, 168 Ill. App. 3d 83, 89, 522

N.E.2d 215, 218 (1988).  The decision to make these improvements is

discretionary (Snyder v. Curran Township, 167 Ill. 2d 466, 474-75,

657 N.E.2d 988, 993 (1995)), and local public entities are not

liable for failing to undertake public improvements of the roadways

(Hull v. City of Chicago, 236 Ill. App. 3d 405, 406, 602 N.E.2d

1300, 1301 (1992)).  Accordingly, this court, in Havens, stated

that a "township has no common law duty to widen roads, smooth

gravel, erect signs, or mow weeds."  Havens, 175 Ill. App. 3d at

771, 530 N.E.2d at 285.  

     However, it is well settled that the local public body's

general duty to maintain its property in a reasonably safe manner

encompasses a specific duty to make public improvements, once

undertaken, in a reasonably safe manner.  Wagner v. City of

Chicago, 254 Ill. App. 3d 842, 851, 626 N.E.2d 1227, 1234 (1993),

aff'd, 166 Ill. 2d 144, 651 N.E.2d 1120 (1995); Havens, 175 Ill.

App. 3d at 771, 530 N.E.2d at 285.  Our supreme court recently

stated in Snyder that "once the decision to perform the work is

made, it must be done with reasonable care and in a nonnegligent

manner."  (Emphasis added.)  Snyder, 167 Ill. 2d at 474-75, 657

N.E.2d at 993.  A local public body is liable in tort when it

undertakes a public improvement and the improvement creates an

unreasonably dangerous condition.  Hull, 236 Ill. App. 3d at 406,

602 N.E.2d at 130; Santelli v. City of Chicago, 222 Ill. App. 3d

862, 867, 584 N.E.2d 456, 459 (1991); see also Snyder, 167 Ill. 2d

at 475, 657 N.E.2d at 993.  

     Based upon this well-settled case law, we summarily reject the

Township's contention that it had "no duty."  Because the Township

undertook to improve a portion of Eagle Lake Road, it had a duty to

proceed with reasonable care.  In addition, it is well settled that

as soon as a local public entity begins to carry out its plan to

make a public improvement, it acts ministerially.  Bonnell v.

Regional Board of School Trustees, 258 Ill. App. 3d 485, 490, 630

N.E.2d 547, 550 (1994); Eck v. McHenry County Public Building

Comm'n, 237 Ill. App. 3d 755, 762-63, 604 N.E.2d 1109, 1115 (1992);

see also Snyder, 167 Ill. 2d at 474, 657 N.E.2d at 993.  A local

public entity does not have discretionary immunity for ministerial

acts.  See Snyder, 167 Ill. 2d at 473, 657 N.E.2d at 992.  For this

reason, the Township is not entitled to discretionary immunity

pursuant to sections 2-109 and 2-201 of the Tort Immunity Act.

     We also conclude that the Township is not entitled to immunity

under section 3-103(a) of the Act.  This section of the Act states

that a local public entity is immune from liability "for an injury

caused by the adoption of a plan or design of a construction of, or

an improvement to public property where the plan or design has been

approved in advance of the construction or improvement."  (Emphasis

added.)  745 ILCS 10/3-103(a) (West 1994).  The section also

provides that the "local public entity is liable, however, if after

the execution of such plan or design it appears from its use that

it has created a condition that is not reasonably safe."  (Emphasis

added.)  745 ILCS 10/3-103(a) (West 1994).

     The Township claims immunity because the gravel road was

constructed based upon specifications approved by IDOT.  However,

section 3-103(a) immunity has been held inapplicable unless the

injuries result from the adoption of a plan or design.  Eck, 237

Ill. App. 3d at 764, 604 N.E.2d at 1117.  Here, the plaintiff's

claim was that his injuries were caused by the unsafe condition of

the road after the work was done.  The plaintiff has never claimed

that his injuries were caused by any defect in the plan or design

of the road.  In addition, by its own terms, section 3-103(a) does

not provide immunity where "it appears from it use" that a local

public entity has created a condition that is not reasonably safe. 

745 ILCS 10/3-103(a) (West 1994); see Cole v. City of East Peoria,

201 Ill. App. 3d 756, 758, 761, 559 N.E.2d 769, 771, 773 (1990).  

     The Township strenuously argues that this exception to

immunity does not apply in this case.  The Township notes that it

received no complaints or notification of other accidents in the

four days between the completion of the project and the plaintiff's

accident.  The Township concludes that this lack of notice means

that it is entitled to immunity.  We do not agree.  

     Here, Werner observed the road after the improvement was

completed.  He admitted that it was possible there was 3½ inches of

loose gravel left on the road.  The plaintiff's experts testified

that the road was not adequately compacted and was unsafe.  Because

the evidence showed that the Township created a condition that was

not reasonably safe, and had notice of the condition, the Township

was not entitled to immunity under section 3-103(a) of the Tort

Immunity Act.

                               TRIAL ERRORS

     The Township next contends that it is entitled to a new trial

because of four specified trial errors.  We do not agree. 

     The Township initially claims that the trial court abused its

discretion when it allowed witnesses to testify there were no

warning signs posted on the road.  The Township insists the

testimony was improper because it cannot be held liable for failing

to post warning signs under section 3-104 of the Tort Immunity Act. 

We agree with the Township's claim that section 3-104 of the Tort

Immunity Act provides absolute immunity for a local public entity's

failure to initially provide traffic signals and signs.  745 ILCS

10/3-104 (West 1994); West v. Kirkham, 147 Ill. 2d 1, 6-8, 588

N.E.2d 1104, 1106-08 (1992).  

     In this case, however, the trial court allowed the evidence to

be presented only as it pertained to the Township's affirmative

defenses that the plaintiff was negligent.  Each time a witness

testified regarding the fact there were no warning signs to alert

the plaintiff, the trial court gave a limiting instruction that the

testimony could not be considered on the issue of the Township's

negligence.  

     Evidentiary rulings properly rest within the sound discretion

of the trial court.  Smith v. Black & Decker (U.S.), Inc., 272 Ill.

App. 3d 451, 455, 650 N.E.2d 1108, 1112-13 (1995).  Absent an abuse

of discretion resulting in prejudice to the party objecting, those

rulings will not be disturbed on appeal.  Smith, 272 Ill. App. 3d

at 455, 650 N.E.2d at 1112-13.  Evidence is relevant when it tends

to prove a fact in controversy or renders a matter in dispute more

or less probable.  Smith, 272 Ill. App. 3d at 458, 650 N.E.2d at

1114-15.  

     In the instant case, the challenged testimony was relevant to

the issue of whether the plaintiff should have been alerted to the

change from the solid pavement to gravel and whether the plaintiff

should have been able to slow down to avoid the accident.  Also,

the Township was not prejudiced by the admission of the evidence

because the trial court gave an appropriate limiting instruction. 

Accordingly, we find no abuse of the trial court's discretion.

     Second, the Township argues that the trial court abused its

discretion when it allowed the photograph of a different portion of

Eagle Lake Road to be introduced into evidence.  This photograph

was shown to the jury during the testimony of the plaintiff's

expert witnesses.  It was not admitted into evidence and was not

published to the jury.  Furthermore, the photograph did not go into

the jury room during deliberations.  The trial court stated that it

was allowing the photograph to be shown to the jury only for

demonstrative purposes.  

     Demonstrative evidence has no probative value in itself, but

serves as a visual aid to the jury in comprehending the verbal

testimony of a witness.  Cisarik v. Palos Community Hospital, 144

Ill. 2d 339, 341-42, 579 N.E.2d 873, 874 (1991).  It is within the

trial court's discretion to determine whether a party may present

demonstrative evidence to clarify an expert's testimony. 

Continental Concrete Pipe Corp. v. Century Road Builders, Inc., 195

Ill. App. 3d 1, 13, 552 N.E.2d 1032, 1040 (1990).  The trial

court's determination regarding the admissibility of demonstrative

evidence will not be disturbed by a reviewing court absent a clear

abuse of discretion.  Elder v. Finney, 256 Ill. App. 3d 424, 427,

628 N.E.2d 393, 395 (1993).  

     Here, the trial court decided that the photograph could be

used as demonstrative evidence and should be shown to the jury to

illustrate the experts' testimony regarding the adequate compaction

of a gravel road.  We conclude that the trial court did not abuse

its discretion in allowing the photograph to be used for this

limited purpose. 

     We additionally note that the Township has supplemented the

record on appeal with the original, unenlarged photograph.  We have

carefully studied the photograph and find that it does not

illustrate much of anything and certainly could not be viewed as

prejudicial.  From our review of the photograph and the record on

appeal, we conclude that the showing of the photograph to the jury

did not prejudice the Township in any way. 

     Third, the Township argues that reversible error occurred when

the trial court gave a "missing witness" instruction.  The Township

used an expert witness, Mel Larsen, who testified at the first

trial.  Larsen was listed by the Township as a witness for the

second trial.  Prior to the second trial, the Township was allowed

a continuance based upon Larsen's unavailability.  However, during

the second trial, the Township did not call Larsen as a witness. 

The Township did not notify the plaintiff prior to trial that

Larsen would not be testifying, and the plaintiff's attorney

referred to Larsen's expected expert testimony in his opening

statement to the jury.  

     When Larsen did not testify, the plaintiff requested a

"missing witness" instruction.  The plaintiff argued that Larsen's

credibility was impeached during the first trial when it was shown

there was no basis for Larsen's opinions.  The trial court gave the

plaintiff's instruction over the Township's objection.

     The Township argues that it made the decision not to call

Larsen as an expert witness at the second trial because the main

points sought to be established by his testimony were already

presented to the jury during its cross-examination of the

plaintiff's three experts.  The Township contends that the

instruction was improperly given because it had a valid reason not

to call Larsen and because Larsen's opinions were not adverse to

the Township.

     The "missing witness" instruction tells the jury that it may

infer that the testimony of the witness would be adverse to the

party failing to offer it when: (1) the witness was under the

control of the party; (2) the witness was not equally available to

the other party; (3) a reasonably prudent person under the same or

similar circumstances would have produced the witness ; and (4) no

reasonable excuse for the failure to call the witness has been

shown.  Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed.

1995); Taylor v. Kohli, 162 Ill. 2d 91, 97, 642 N.E.2d 467, 469

(1994).  It is true that a missing witness instruction is not

warranted where the witness's testimony would merely have been

cumulative.  See Wilkerson v. Pittsburgh Corning Corp., 276 Ill.

App. 3d 1023, 1029, 659 N.E.2d 979, 983 (1995).  However, in

Wilkerson, the court found the instruction should not have been

given because the testimony of the expert witnesses the defendants

failed to call would have been cumulative of the favorable

testimony given by the defendants' other expert.  Wilkerson, 276

Ill. App. 3d at 1028-30, 659 N.E.2d at 983-84.  Here, the Township

is arguing that it did not call Larsen as a witness because his

testimony would have been cumulative of the generally adverse

testimony of the plaintiff's experts.  Based on our review, we do

not find the defendant's argument to be persuasive.

     A missing witness instruction was held properly given when the

expert who did not testify at trial was listed as the defendants'

expert and was deposed and where the defendants had previously

obtained a continuance of the trial to enable the expert to

testify.  Ryan v. E.A.I. Construction Corp., 158 Ill. App. 3d 449,

462-63, 511 N.E.2d 1244, 1253 (1987).  In addition, a missing

witness instruction may be appropriate if no notice is given to the

opposing side that the expert will not be called.  See Taylor, 162

Ill. 2d at 97-98, 642 N.E.2d at 469-70.  The decision to instruct

the jury as to the adverse inference of missing witnesses is within

the sound discretion of the trial court.  Simmons v. Univ