No. 2--95--1233  

                                             

_________________________________________________________________

                            IN THE

                  APPELLATE COURT OF ILLINOIS

                         SECOND DISTRICT

_________________________________________________________________

ROADSIDE AUTO BODY, INC. and  )  Appeal from the Circuit Court

LIBERTY MUTUAL INSURANCE      )  of Lake County.

COMPANY,                      )

                              )

     Plaintiffs-Appellees,    )

                              )  

v.                            )  No. 92--MR--475

                              )

SCOTT A. MILLER,              )

                              )

     Defendant-Appellant      )  

                              )  Honorable

(The Industrial Commission,   )  Stephen E. Walter,

 Defendant).                  )  Judge, Presiding.           

________________________________________________________________

     JUSTICE THOMAS delivered the opinion of the court:

     The plaintiffs, Roadside Auto Body, Inc. (Roadside), and

Liberty Mutual Insurance Company (Liberty Mutual), filed this

declaratory judgment action in the circuit court of Lake County

against the defendants, Scott Miller and the Industrial Commission

(Commission), seeking to vacate as fraudulent a workers'

compensation settlement agreement approved by the Commission. 

Following a bench trial, the trial court found that Miller

fraudulently filed a workers' compensation claim, and, therefore,

the settlement agreement entered into by the parties was void.  The

court entered judgment in favor of the plaintiffs for $56,465.78,

which represented the amount the plaintiffs had paid Miller for

temporary total disability and medical benefits.  The court further

ordered that the order of the Commission awarding Miller penalties

and attorney fees be set aside.  Miller appeals.

     Jim Best testified that he was the owner of Roadside and that

Miller was one of his employees in 1990.  In May 1990, Miller

reported that he had suffered an injury to his back while working

at Roadside on March 26, 1990.  As far as Best knew, there were no

witnesses to the accident.  Best had some concerns that Miller's

back injury was due to a preexisting condition, so he called

Liberty Mutual, Roadside's insurance carrier, to voice his

concerns.  Best was told that, as long as the injury occurred at

Roadside, it was compensable, even if the employee had a

preexisting condition.

     On March 4, 1992, Best was informed that Liberty Mutual had

settled Miller's workers' compensation claim.  At that time, Ron

Hinde, an employee of Roadside, told Best that he thought there was

something wrong with Miller's claim but he did not elaborate. 

Thereafter, Best contacted John Simon and Larry Cozzi of Liberty

Mutual to discuss Miller's claim.  At that time, Best had no

additional information about the legitimacy of Miller's claim.  On

March 13, 1992, and March 18, 1992, Best talked with John Kaminski,

a fraud investigator for Liberty Mutual, about Miller's case. 

Prior to March 18, 1992, Best did not have any specific information

from Hinde indicating that Miller's claim was not valid.  After

refreshing his recollection from labor control records, Best stated

that on the date of the alleged accident Miller did not perform any

work on the truck he claimed to have been working on when he

injured his back.

     Charles Whitley testified that he was the first Liberty Mutual

claim representative assigned to Miller's workers' compensation

claim.  According to Whitley, Miller told him that he had injured

himself while attempting to lift some equipment with the help of

the owner of the vehicle, Ed Dominick.

     John Simon, a claims specialist for Liberty Mutual, testified

that he received the Miller file on January 30, 1992.  When he

reviewed the file and performed some follow-up investigation in

February 1992, there was no indication at that time that the claim

was not compensable.  On March 4, 1992, Simon settled the claim

with Miller's attorney.  That same day, Simon received a call from

Best who told Simon that Miller may have previously injured himself

somewhere else.  Simon informed Best that a preexisting injury that

is aggravated is still compensable under the Workers' Compensation

Act (Act) (820 ILCS 305/1 et seq. (West 1994)).  Despite the lack

of evidence indicating fraud, Simon sent the file to Kaminski for

further review.  Simon also noted that on March 5, 1992, he

conferred with Ed Makauskas, a claims manager for Liberty Mutual,

and advised him that the insured thought the claim was fraudulent. 

However, Makauskas did not believe fraud was involved.  Simon

explained that often an allegation of fraud on the part of the

employer simply turns out to be a case involving an aggravation of

a preexisting condition.

     Dawn Benjamin, the office manager at Roadside, testified that

her duties included submitting insurance forms.  On May 21, 1990,

Miller reported his March 26, 1990, injury for the first time. 

Miller told Benjamin that the injury occurred while he worked on Ed

Dominick's truck.  Miller did not miss any work between March 26,

1990, and May 21, 1990.

     Michael Nitti, the shop manager at Roadside, testified that,

from the date of the alleged injury until it was reported, he did

not observe Miller having any difficulty completing his employment

responsibilities.  Nitti further testified that lifting an axle

assembly into place, as Miller claimed he had been doing at the

time of the accident, was typically a two-person job that was not

physically possible to accomplish without help.  Nitti stated that

Roadside had a policy requiring all employees to immediately report

on-the-job injuries to him.  He first learned of the alleged

incident when it was reported to Benjamin on May 21, 1990.        

     Edward Dominick was the owner of the truck that Miller

allegedly worked on when he was injured.  Dominick testified that

he did not assist Miller in working on any part of his truck and

did not witness the alleged accident.

     Ron Hinde testified that Miller was his co-worker at Roadside

and prior to that at All Tune and Lube.  While both men were

working at Roadside, Miller told Hinde that he was going to report

an on-the-job back injury so that he could get his back repaired,

which he had injured while in the military.  Hinde did not believe

that Miller injured his back at Roadside.  Hinde did not come

forward with this information immediately because he did not want

to get involved.  He eventually told Kaminski on March 18, 1992,

about Miller's previous back injury and his plans to have surgery

through workers' compensation.  Hinde further testified that Miller

approached Hinde periodically pressuring him to corroborate

Miller's story.  When Hinde refused, Miller became verbally abusive

and threatened to burn down Hinde's house.

     John Kaminski, supervisor of field investigations for Liberty

Mutual, testified that his unit often received fraud claims only to

find out that the allegation of fraud was simply an aggravation of

a preexisting condition.  When he received Miller's file, he did

not find anything to indicate that Miller's claim was fraudulent. 

Rather, he thought this was another case involving an aggravation

of a preexisting injury without any evidence of fraud.  When Best

voiced his concerns about fraud on March 5, 1992, there was no

indication of fraud.  Nonetheless, to address Best's concerns,

Kaminski scheduled a meeting with Best for March 13, 1992. 

Kaminski noted that he met with Best on that date but nothing

surfaced at that meeting to suggest anything other than an

aggravation of a preexisting condition.  When Kaminski returned to

Roadside on March 18, 1992, Best asked him to talk with Hinde and

Nitti.  After he talked with Hinde, Kaminski concluded that Miller

had fabricated his workers' compensation claim.  He immediately

contacted Simon to determine the status of the settlement of the

case and learned that the Commission had already approved the

settlement contract executed on behalf of Miller and Roadside. 

According to Kaminski, March 18, 1992, was the first time he heard

an allegation that Miller had not been injured working at Roadside.

     Paul Schoenbeck testified that he was working with Miller at

the time of Miller's back injury.  Schoenbeck stated that the

accident occurred because they were both lifting an axle when

Schoenbeck dropped his end of the axle causing Miller to hurt his

back.  Schoenbeck stated that Best had been informed of the

accident on the date it occurred.  Schoenbeck admitted that he and

Miller had been roommates for five months.

     Lawrence Cozzi, an attorney employed by Liberty Mutual,

testified that he reviewed Miller's file and was convinced the

claim was compensable.  He then signed the lump sum settlement

contract on March 11, 1992, on behalf of Roadside.  At that time,

he was not aware of any evidence of fraud.

     Miller testified that he had suffered a back injury while in

the military that had been diagnosed as spondylolisthesis.  Miller

admitted that he talked to Hinde about back problems but denied any

conversation about having his back repaired through workers'

compensation benefits.  Miller stated that his injury occurred

while he was working on Dominick's vehicle and trying to lift an

axle up from the floor by himself when he felt pain in his back. 

Miller denied that he had threatened Hinde.

     Dr. Richard Berglund testified in his deposition that he

examined Miller on April 6, 1990.  Berglund opined that Miller was

suffering from an acute herniated disc rather than a long-term,

chronic injury.  He further testified  that he felt the likelihood

of Miller's back injury being a preexisting condition was minimal

because he would have experienced pain and disability.  Dr.

Berglund acknowledged that the plaintiff never told him that he had

chronic back problems.

     On appeal, Miller initially contends that the trial court

erred in vacating the Commission's approval of the settlement

contract because (1) the plaintiffs waived their right to allege

fraud by signing the contract which contained language stating that

it was "to resolve the dispute about the benefits to which the

petitioner is entitled"; (2) the proper forum to dispute the issue

of whether there was a work-related accident was before the

Commission and the plaintiffs waived their defense of the claim by

settling the case with knowledge of unresolved issues of fact; (3)

the plaintiffs waived their right to claim fraud by closing their

eyes to the fraud; and (4) the Commission had primary jurisdiction

over the case because they possessed specialized expertise to

determine whether Miller was injured at work. 

     Section 19(f) of the Act provides that "[t]he decision of the

Commission acting within its powers, according to the provisions of

paragraph (e) of this Section shall, in the absence of fraud, be

conclusive unless reviewed as in this paragraph hereinafter

provided."  (Emphasis added.)  820 ILCS 305/19(f) (West 1994).  The

Illinois Supreme Court has held that the statute does not confer

jurisdiction upon the Commission to reopen and set aside a lump sum

settlement.  Michelson v. Industrial Commission, 375 Ill. 462, 467-

68 (1941).  However, the statute plainly indicates that fraud is a

basis upon which a Commission decision may be reexamined and the

supreme court has long held that a party may maintain a complaint

before the circuit court in equity to procure relief from a

judgment of the Commission based on fraud.  Daugherty v. National

Union Electric Corp., 160 Ill. App. 3d 747, 749 (1987).  Were a

circuit court not empowered, in equity, to set aside a fraudulently

obtained judgment rendered by the Commission, that portion of

section 19(f) of the Act that permits such relief would be rendered

meaningless and insulate a defendant from liability for fraudulent

conduct.  Daugherty, 160 Ill. App. 3d at 749.

     Applying the above-mentioned principles, we reject Miller's

claim that the circuit court was not the proper forum and lacked

jurisdiction to hear this fraud case.  Moreover, Miller's claim of

waiver is not supported by the record.

     After careful perusal of the record, we find it apparent that

right up to the time of settlement Roadside and Liberty Mutual had

no indication that Miller did not incur an injury at work.  Rather,

the investigation and communication concluded prior to settlement

revealed that Miller may have had a preexisting condition and Best

was unclear as to whether Roadside was liable for an aggravation of

that injury.  Liberty Mutual did not learn that Miller had

fabricated his claim until Kaminski spoke with Hinde on March 18,

1992, several days after the Commission had approved the

settlement.  Since the fraud perpetrated by Miller was the basis

for the settlement, he cannot successfully argue waiver.  Because

the Commission was not empowered to reopen the case, the plaintiffs

properly filed their complaint in the circuit court of Lake County.

     The present case differs from the typical workers'

compensation case where the issue of a work-related injury is at

stake.  Here, the facts suggest that the complainant himself did

not believe he sustained an accident at work but asserted falsely

that he did so.  In the typical case, a complainant genuinely

believes his injury was work-related and that it occurred within

the scope of his employment, but his belief may simply be erroneous

as opposed to fraudulent.  At any rate, we would agree that the

Commission is well qualified to resolve issues involving fraud in

connection with an allegedly work-related injury.  However, the

issue was never brought before the Commission in this case and the

contract was approved by the Commission without knowledge on the

part of the plaintiffs or the Commission that Miller had filed a

fraudulent claim.  Under the circumstances, the circuit court was

empowered to set aside the judgment of the Commission approving the

parties' settlement.

     Miller next argues that the trial court erred in admitting the

testimony of Hinde.  He contends that because Hinde's testimony did

not specify the location where the conversation between the two of

them occurred it lacked an adequate foundation.

     Miller does not cite any authority in support of his argument. 

Supreme Court Rule 341(e)(7) requires that arguments in an

appellant's brief be supported by citation to authority.  155 Ill.

2d R. 341(e)(7).  Accordingly, we find that Miller has waived the

argument on appeal.  See Ollivier v. Alden, 262 Ill. App. 3d 190,

199 (1994).  Even assuming that Miller did not waive the argument,

we would find that Hinde's testimony was properly admitted, despite

the absence of a specific location, to impeach Miller's testimony

and as a party admission.  See People v. Cobb, 97 Ill. 2d 465, 479-

81 (1983); Boyce v. Risch, 276 Ill. App. 3d 274, 278-79 (1995).

     Miller next argues that the plaintiffs failed to prove fraud

by clear and convincing evidence.

     The elements of fraudulent misrepresentation are (1) a false

statement of material fact; (2) known or believed to be false by

the party making it; (3) intent to induce the other party to act;

(4) action by the other party in justifiable reliance on the truth

of the statement; and (5) damage to the other party resulting from

such reliance.  Giammanco v. Giammanco, 253 Ill. App. 3d 750, 757

(1993).  These elements must be proved by clear and convincing

evidence.  Williams v. Chicago Osteopathic Health Systems, 274 Ill.

App. 3d 1039, 1048 (1995).  However, the trial court's findings of

fact will not be disregarded unless they are against the manifest

weight of the evidence.  Chicago Title & Trust Co. v. First

Arlington National Bank, 118 Ill. App. 3d 401, 410 (1983).  On

appeal, the reviewing court must take questions of testimonial

credibility as resolved in favor of the prevailing party and must

draw from the evidence all reasonable inferences in support of the

judgment.  Chicago Title & Trust Co., 118 Ill. App. 3d at 410.

     Applying the above-mentioned principles, we conclude that the

trial court's finding that Miller filed a fraudulent claim was not

against the manifest weight of the evidence.  In that regard, we

first note that numerous inconsistencies existed between Miller's

version of the alleged accident and other evidence in the case: 

(1) although he claimed to have injured his back on March 26, 1990,

while working on Dominick's vehicle, he waited nearly two months to

report the accident; (2) Miller told a Liberty Mutual

representative that he was working with Dominick when he hurt his

back, but Dominick denied it and Miller claimed at trial that he

was lifting the axle alone; (3) Roadside computer records did not

show that Miller worked on Dominick's vehicle on the day Miller

claimed; (4) Schoenbeck, a friend of Miller, testified that while

he and Miller lifted the axle, he lost his grip on the axle causing

Miller to injure his back, yet Miller claimed he was lifting it

alone.

     Whereas the trial court found Miller's testimony to lack

credibility, the trial court found Hinde's testimony particularly

credible and persuasive.  Hinde testified that Miller told him that

he had hurt his back in the military and wanted to get it repaired

through workers' compensation and that he wanted to get out of his

line of work by collecting the proceeds of a workers' compensation

claim.  Once Miller filed his claim, he repeatedly pressured Hinde

to claim that he had witnessed the alleged accident.  When Hinde

refused, Miller threatened to burn Hinde's house down.  It has long

been a rule of law that efforts made by a party to suborn witnesses

or fabricate evidence imply an admission that the party has no

right to recover if the case was tried on the evidence as it

exists.  Chicago City Railway Co. v. McMahon, 103 Ill. 485, 488

(1882).

     Miller relies heavily on the testimony of Dr. Berglund, who

opined that Miller was suffering from a herniated disc rather than

a long-term chronic back injury.  However, Miller did not inform

Berglund about his history of back problems.  At any rate, the fact

that Berglund's testimony may have favored Miller does not render

the trial court's finding against the manifest weight of the

evidence in light of all the evidence presented in the case and

given the trial court's evaluation of the credibility of the

witnesses.

     Miller next argues that the plaintiffs did not reasonably rely

on any statement of Miller.  Miller contends that because Liberty

Mutual was conducting a fraud investigation at the time of

settlement they could not have relied on the statements of Miller. 

We disagree.

     Generally, in a fraud action, the determination of whether the

plaintiff's reliance was justifiable necessitates examination of

all facts which the plaintiff knew, as well as those facts which

the plaintiff could have learned through the exercise of ordinary

prudence.  Weber v. De Kalb Corp., Inc., 265 Ill. App. 3d 512, 516

(1994).  However, it has been noted that, when a defendant makes a

positive statement of material fact with the intention of inducing

a party to act in reliance thereon, it is ineffective to charge the

plaintiff with negligence.  Commercial National Bank v. Federal

Deposit Insurance Corp., 131 Ill. App. 3d 977, 982 (1985).  One is

justified in relying upon the representations of another, without

independent investigation, where the person to whom the

representations are made does not have the same ability to discover

truth as the person making the representations.  Gerill Corp. v.

Jack L. Hargrove Builders, Inc., 128 Ill. 2d 179, 195 (1989).

     Here, as previously stated, the plaintiffs had no reason to

believe that Miller had not been injured at work at the time of the

settlement.  Moreover, they were not obligated to conduct a further

investigation in view of Miller's positive statement of fact that

he had been injured on the job and the plaintiffs' lack of ability

to discover the truth.  The evidence in that regard was almost

exclusively within the control of Miller, and before Hinde came

forward it would have been difficult if not impossible for the

plaintiffs to discover the truth.  Under the circumstances, we find

that the trial court properly found that the plaintiffs justifiably

relied on a material misrepresentation by Miller.

     Lastly, we note that Miller argues for the first time in his

reply brief that the trial court erred in both setting aside the

settlement contract and entering a monetary judgment on behalf of

the plaintiffs.  He maintains that the proper remedy for his fraud

was to vacate the settlement and remand the cause to the

Commission.

     Initially, we find that Miller waived the issue by raising it

for the first time in his reply brief.  See 155 Ill. 2d R. 341(g). 

Assuming that the issue has not been waived, Miller's argument

would be rejected nevertheless.  It is axiomatic that damages are

recoverable in a fraud case and that the measure of damages is

determined by assessing the loss to the plaintiff.  Giammanco, 253

Ill. App. 3d at 758-61; Shah v. Chicago Title & Trust Co., 119 Ill.

App. 658, 662 (1983).  Thus, we find no error in the trial court's

award of damages to the plaintiffs for the amount the plaintiffs

lost in paying the settlement.  A remand to the Commission is not

proper since it has no jurisdiction to hear a common-law fraud case

and therefore, no jurisdiction to assess damages in this case. 

Here, the circuit court did not make a decision with respect to an

award under the workers' compensation statute but instead assessed

damages in a fraud case.  The authority cited by Miller in support

of his position has no application here.

     For the foregoing reasons, the judgment of the circuit court

of Lake County is affirmed.

     Affirmed.

     GEIGER and HUTCHINSON, JJ., concur.