RAVALEE WILKERSON, Indiv. and as Special Adm'r of the Estate of Frank Wilkerson, Deceased, Plaintiff-Appellee, v. PITTSBURGH CORNING CORPORATION *et al.*, Defendants-Appellants.

Fourth District No. 4—94—1123

Argued November 15, 1995.—Opinion filed December 21, 1995.—Rehearing denied February 1, 1996.

McCULLOUGH, J., dissenting.

Dennis J. Dobbels (argued), Jeffery J. Matthews, and Kristine K. Kraft, all of Polsinelli, White, Vardeman & Shalton, P.C., of Kansas City, Missouri, for appellant Pittsburgh Corning Corporation.

John Dames (argued) and Stephen A. Wood, both of Kelley, Drye & Warren, of Chicago, for appellant Owens-Corning Fiberglas Corporation.

James Walker (argued), of James Walker, Ltd., of Bloomington, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1988, plaintiff, Ravalee Wilkerson, individually and as special administrator of the estate of Frank Wilkerson (Wilkerson), sued defendants, Owens-Corning Fiberglas Corporation (OCF), Pittsburgh Corning Corporation (PC), and several others to recover damages for harm Wilkerson suffered resulting from his exposure to asbestos-containing products. In September 1994, a jury returned a verdict for plaintiff and against defendants OCF and PC, which appeal, arguing that the trial court erred by (1) giving an adverse inference (missing witness) instruction; (2) refusing to give instructions and a verdict form regarding contribution; (3) refusing to give proximate cause instructions based on the "frequency, regularity, and proximity" test of proximate causation; (4) permitting plaintiff's expert to testify that Wilkerson's cancer was caused by exposure to asbestos; (5) allowing into evidence a certain deposition; (6) excluding certain other deposition testimony; (7) excluding evidence of Wilkerson's exposure to other manufacturers' asbestos-containing products; and (8) denying defendants' motions for directed verdict and judgment *n.o.v.*

Because we agree with defendants' first argument, we reverse and remand for a new trial.

## I. BACKGROUND

In May 1988, Wilkerson died at the age of 58 due to complications arising from surgery to remove a malignancy from his lung. Plaintiff alleged that her husband developed lung cancer as a result of his exposure to asbestos-containing products manufactured, distributed, or installed by OCF and PC during his employment as a boilermaker from 1966 to 1988 at certain power plants in Illinois. In 1986, Wilkerson began to experience health problems. In December 1986, an X ray showed a spot on his right lung. In April 1988, Dr. Neil Rosenberg, a consulting physician, examined Wilkerson to diagnose the growth and suggest treatment. In May 1988, after performing a lobectomy, Wilkerson's physicians determined that the growth was a carcinoma of the lung. Approximately three weeks after the lobectomy, Wilkerson died due to lung carcinoma and cardiovascular disease.

During 1967, Wilkerson worked for Riley Stoker on the construction of the Edwards Station power plant (Edwards). In 1971, Wilkerson worked at Edwards for Foster Wheeler. In 1967, OCF supplied more than 5,400 linear feet of asbestos-containing Kaylo pipe covering to Sprinkmann, the insulation contractor at Edwards. In 1971, OCF supplied more than 5,000 linear feet of Kaylo pipe covering to Sprinkmann at Edwards.

Gary Gaylord testified that he used Kaylo while working as an insulator for Sprinkmann at Edwards, and Kaylo generated dust which filtered through the entire building, including the breathing zones of boilermakers working underneath. Gaylord also stated there was no way that a boilermaker could have worked at Edwards and not breathed some of the dust the Kaylo gave off.

Floyd Wood, a boilermaker, worked with Wilkerson at Edwards. Wood testified that dust generated by the insulators working above the boilermakers entered the air they breathed.

Wilkerson worked for several employers at the Quad-Cities Nuclear Facility at Cordova (Cordova power plant) during the fourth quarter of 1968, the first and second quarters of 1969, the first quarter of 1970 (when he worked for Power Systems), the fourth quarter of 1970 and the first quarter of 1971 (when he worked for United Engineers), and the second and third quarters of 1972. During 1970 and 1971, PC shipped more than 51,000 linear feet of asbestos-containing Unibestos pipe covering to the Cordova power plant, in care of Brand Insulation (Brand).

Robert Sindelar, through a deposition, testified that he worked as an insulator for Brand at the Cordova power plant during January and February 1970, and from March 1971 through August 1972. Sindelar testified that he recalled using Unibestos pipe covering at the Cordova power plant.

James Ferguson, an insulator for Brand at the Cordova power plant during 1970 and 1971, testified that he recalled using Kaylo pipe covering and believed that he used Unibestos as well. Ferguson stated that when he applied the insulation it gave off dust which entered the breathing zones of all workers without any system for containment. Ferguson testified that any boilermaker working at the Cordova power plant during 1970 and 1971 would have breathed asbestos dust from products used by Brand insulators.

During the third and fourth quarters of 1972, Wilkerson worked at the Powerton Station power plant (Powerton). In 1972, OCF delivered more than 7,100 linear feet of Kaylo pipe covering to Powerton. Wood testified that insulators working above the boilermakers generated asbestos dust which then filtered down into the air breathed by the boilermakers.

Dr. Jon Konzen, a former medical director of OCF, testified that, regarding concerns about cancer, any exposure to asbestos is too much. Dr. Konzen also testified that when a worker is exposed to asbestos from more than one source, it is impossible to exonerate any of the sources and, from a medical perspective, each source would be considered a cause of the resulting disease.

Dr. Rosenberg testified that his objective as a consulting physician was to diagnose Wilkerson's condition. After taking a complete history, performing a physical examination, and reviewing Wilkerson's X rays, Dr. Rosenberg concluded that Wilkerson had an enlarging mass which was probably malignant. Dr. Rosenberg also testified that, in his opinion, Wilkerson's occupational exposure to asbestos was related to the cause of his lung cancer.

Dr. Michael Graham, the medical expert witness for defendants, testified that he saw no evidence that asbestos fibers had caused any scarring on Wilkerson's lungs. Dr. Graham further testified that in the absence of any objective evidence of such scarring, the cause of Wilkerson's lung cancer was his longtime cigarette smoking.

## II. ANALYSIS

### A. *The Instruction on Defendants' Failure To Produce Witnesses*

Defendants first argue that the trial court abused its discretion by giving plaintiff's tendered jury instruction No. 9A, which was based on Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989) (hereinafter IPI Civil 3d), which informs the jury that if a party fails to produce a witness whom the party has the power to produce, the jury may infer that the witness' testimony would be adverse to that party. Defendants assert that plaintiff's instruction No. 9A was improper because the testimony of defendants' experts, Drs. Weill and Skillrud, would have been cumulative of the testimony of Dr. Graham. In response, plaintiff argues that the court properly gave the instruction because defendants did not present evidence of warnings or threshold limit values and because PC stated that it would present experts and then did not produce them. We agree with defendants' analysis.

■ IPI Civil 3d No. 5.01, the adverse inference instruction, is available when (1) the witness was under the control of the party against whom the instruction is offered and could have been produced by reasonable diligence, (2) the witness was not equally available to the adverse party, (3) a reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him, and (4) no reasonable excuse for the failure to produce the witness has been shown. *Taylor v. Kohli* (1994), 162 Ill. 2d 91, 97, 642 N.E.2d 467, 469.

■ The giving of IPI Civil 3d No. 5.01 is within the discretion of the trial court, and a reviewing court will reverse only when the trial court clearly abused its discretion. (*Johnson v. Owens-Corning Fiberglas Corp.* (1992), 233 Ill. App. 3d 425, 436, 599 N.E.2d 129, 136.)

Before giving the instruction, the trial court must first determine whether, in all likelihood, the party would have produced the witness under the facts and circumstances of the case unless the testimony would be unfavorable. (*Johnson*, 233 Ill. App. 3d at 436, 599 N.E.2d at 136.) For example, if the witness' testimony would be merely cumulative of facts already established, the instruction is not warranted. *Johnson*, 233 Ill. App. 3d at 437, 599 N.E.2d at 137.

After the evidence had been presented, the trial court conferred with counsel about the instructions and exhibits. Plaintiff explained that she tendered instruction No. 9A because defendants listed the experts as witnesses and then failed to produce them to testify. Defendants objected to the instruction because the testimony of Drs. Weill and Skillrud would have been cumulative to the testimony of Dr. Graham. According to OCF, once it had observed Dr. Graham testify with clarity as to defendants' position that the cause of Wilkerson's cancer was cigarette smoking, OCF determined that there was no need to extend the trial another day by calling Drs. Weill and Skillrud to testify. According to PC, both Drs. Weill and Skillrud would have testified that cigarette smoking was the sole cause of Wilkerson's cancer, and such testimony was cumulative of Dr. Graham's testimony. The trial court overruled defendants' objections without further explanation.

■ The record before us, including Dr. Weill's opinion letter and Dr. Skillrud's deposition, demonstrates that the testimony of those experts would have been cumulative to the testimony of Dr. Graham, as defendants contended at the conference. Dr. Graham testified that he saw no evidence that asbestos fibers had caused any scarring on Wilkerson's lungs, and in the absence of any objective evidence of scarring, the cause of his lung cancer was cigarette smoking. Dr. Weill stated in his opinion letter that no basis existed upon which to conclude that Wilkerson's lung cancer was attributable to asbestos exposure, and the "overwhelming probability" was that his lung cancer was caused by cigarette smoking. Dr. Skillrud testified in his deposition that there "was no objective evidence of asbestosis whatsoever. Furthermore, there is no objective evidence for asbestos exposure. [Wilkerson's] smoking history was the cause of the lung [cancer]." Because the testimony of Drs. Weill and Skillrud would have been merely cumulative of facts already established through Dr. Graham, the adverse inference instruction was not warranted, and the trial court, in giving that instruction, affirmatively misled the jury regarding a situation he knew not to be true. Accordingly, we hold that the trial court abused its discretion in giving that instruction.

In so holding, we note that a rule that penalizes a party for failure to call expert witnesses whom the party has previously identified has potentially unfair—and serious—consequences. If a party does not disclose an expert witness, then the trial court properly may bar the witness' testimony. If a party does disclose an expert witness but does not call the witness to testify, the party may be harmed if the court gives the adverse inference instruction. Requiring a party to call all previously disclosed expert witnesses would unnecessarily prolong the trial and unnecessarily increase expenses. (See *Chiricosta v. Winthrop-Breon* (1994), 263 Ill. App. 3d 132, 158-59, 635 N.E.2d 1019, 1038.) As this court stated in *Betts v. Manville Personal Injury Settlement Trust* (1992), 225 Ill. App. 3d 882, 901, 588 N.E.2d 1193, 1206, "[w]e decline to require every party to produce every expert it lists as a possible witness in order to avoid the unfavorable inference instruction."

### B. *Prejudice Resulting from Trial Court's Error in Giving Adverse Inference Instruction*

Defendants further argue that plaintiff's instruction No. 9A, in combination with plaintiff's exhibit No. 56 (which was admitted over objection and expressly focused the jury's attention on the absence of Drs. Weill and Skillrud as expert witnesses) prejudiced defendants. OCF asserts that by instructing the jury that it could presume that Drs. Weill and Skillrud would testify contrary to Dr. Graham, the trial court effectively negated Dr. Graham's testimony and left defendants with no medical defense. We agree.

■ On appeal, a reviewing court will reverse and grant a new trial based on a trial judge's error in instructing the jury only when the error resulted in prejudice to the appealing party. (*Johnson*, 233 Ill. App. 3d at 437, 599 N.E.2d at 137.) In the present case, the adverse inference instruction, particularly when considered jointly with plaintiff's exhibit No. 56, resulted in serious prejudice to defendants. Exhibit No. 56 referred to defendants' pretrial disclosure of Drs. Weill and Skillrud as experts whom defendants retained to present opinion testimony at trial. The exhibit further indicated that Dr. Weill would have testified "concerning the effects of cigarette smoking and its relationship to lung cancer" and "the cause of Mr. Wilkerson's lung cancer." The exhibit explicitly directed the jury's attention to the absence of those two defense expert witnesses. Thus, the adverse inference instruction informed the jury that it could presume that the testimony of Drs. Weill and Skillrud would have been contrary to that of Dr. Graham, defendants' only medical expert. By giving the adverse inference instruction under these circumstances, the

trial court effectively nullified defendants' entire medical defense while bolstering the causation testimony of plaintiff's witness, Dr. Rosenberg.

Accordingly, we hold that the trial court's error in giving the adverse inference instruction resulted in serious prejudice to defendants' right to a fair trial and requires reversal.

## III. ISSUES ON REMAND

Although we have determined that this case must be remanded for a new trial, defendants raise several other issues that will likely arise on remand. We address these issues separately.

A. *Apportionment Jury Instructions and Contribution Verdict Form*

The trial court refused to give defendants' contribution verdict form and jury instructions on apportionment of responsibility because the defendants failed to tender separate issues and burden of proof instructions regarding contribution. Defendants contend that the court erred in these rulings, and we agree.

During the jury instruction conference, A&M Insulation Company, another defendant at trial, tendered instructions based on IPI Civil 3d Nos. 600.01, 600.02, 600.13, 600.16, and 45.03, which are apportionment instructions and a contribution verdict form (OCF and PC adopted these tendered instructions). Plaintiff objected because defendants refused to give separate issues and burden of proof instructions pursuant to IPI Civil 3d No. 600.02. The trial court agreed with plaintiff and refused defendants' tendered instructions and contribution verdict form.

■ Parties are entitled to have the jury instructed as to their theories and the issues presented. (*Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1009, 520 N.E.2d 1085, 1092-93.) In *Chakos v. Illinois State Toll Highway Authority* (1988), 169 Ill. App. 3d 1018, 1027, 524 N.E.2d 615, 622, the court stated "[i]nstructions as a whole and in series should be clear enough not to mislead while fairly and accurately stating the law." The determination of whether to give an instruction is a matter within the discretion of the trial court. *Yamnitz v. William J. Diestelhorst Co.* (1993), 251 Ill. App. 3d 244, 252, 621 N.E.2d 1046, 1051.

■ Our examination of IPI Civil 3d No. 600.00 *et seq.* (contribution instructions) and accompanying notes and comments shows that separate issues and burden of proof instructions are not required when defendants only counterclaim for contribution and no third-party claims exist. The "Special Note on Use" for IPI Civil 3d No. 600.00 *et seq.* makes no mention of separate issues and burden of proof instructions for a case in which defendants counterclaim for

contribution, no third-party claims are present, and contribution claims are submitted to the jury concurrently with the primary action. In such a situation, the suggested instructions include only IPI Civil 3d Nos. 600.01, 600.02, and 600.14. The introductory comments to the contribution instructions do state that "[t]he instructions given to the jury must be as simple and direct as possible." (IPI Civil 3d No. 600.00, at 600—9 (notes preceding 600.00 series).) Although IPI Civil 3d No. 600.02 states that "[i]ssues and burden of proof instructions should be used to advise the jury of the claims of the parties and the relevant burdens of proof," nowhere does it suggest that separate issues and burden of proof instructions are *required* in an action where contribution arises only if the jury determines that products of more than one defendant proximately caused plaintiff's injury. IPI Civil 3d No. 600.02, Notes on Use, at 600—21.

■ In the present case, the sole purpose for counterclaims among defendants was to obtain an apportionment of liability in the event the jury found for plaintiff at trial. Defendants were not pursuing different theories against each other; therefore, separate issues and burden of proof instructions were not required.

We note that the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 (West 1994)) grants joint tortfeasors the right to contribution, as follows:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them ***." (740 ILCS 100/2(a) (West 1994).)

Section 3 of the Contribution Act provides that "[t]he pro rata share of each tortfeasor shall be determined in accordance with his relative culpability." (740 ILCS 100/3 (West 1994).) This court has discussed the necessity for and value of the use of computational verdict forms as follows:

"The speculation which arises when computational forms are not used seriously impedes effective review of the jury's apportionment ***. ***

*** The necessity of safeguarding the process of effective review of apportionment of fault is the type of 'special circumstance' which justifies a departure from the principle that courts generally have no duty to instruct the jury in a manner not requested by any of the parties ***." (*Johnson v. O'Neal* (1991), 216 Ill. App. 3d 975, 986, 576 N.E.2d 486, 494.)

Although *Johnson* did not specifically address contribution counterclaims by defendants, the rationale for use of computational verdict forms in such situations is equally convincing.

In light of IPI Civil 3d No. 600.00 *et seq.*, the accompanying comments and notes, the Contribution Act, and *Johnson*, we hold that the trial court abused its discretion by not giving the jury apportionment of responsibility instructions and a contribution verdict form, and on remand, those instructions should be given.

### B. *Nonpattern Proximate Cause Instructions*

Defendants next argue that the trial court erred by refusing to give defendants' tendered nonpattern instructions regarding proximate cause based on frequency, regularity, and proximity of asbestos exposure. The court instead gave plaintiff's proximate cause instruction, IPI Civil 3d No. 15.01. We disagree with defendants' argument.

■ Defendants tendered the following instructions, asserting they were supported by the supreme court's holding in *Thacker v. UNR Industries, Inc.* (1992), 151 Ill. 2d 343, 603 N.E.2d 449:

"[Instruction No. 32:] In order to determine that Frank Wilkerson's exposure to a particular product was a substantial factor in causing his injury, there must be evidence of exposure to that specific product on a regular basis over some extended period of time in proximity to where Frank Wilkerson actually worked.

[Instruction No. 33:] Evidence that a defendant's product was present at a work site where Frank Wilkerson worked is insufficient to establish exposure to that product.

[Instruction No. 34:] In considering whether a product of any of the defendants caused injury to Frank Wilkerson, you should consider the extent he was exposed to that particular product and whether that exposure was a substantial factor in causing his injury."

In *Thacker* (151 Ill. 2d at 359, 603 N.E.2d at 457), the supreme court adopted the "frequency, regularity and proximity" test wherein the plaintiff must show the injured worker was exposed to the defendant's asbestos through proof that he regularly worked in an area where the defendant's asbestos was frequently used, and the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product.

■ Although the statements tendered as instructions may be literally true, nowhere in *Thacker* does the above language appear. Defendants apparently lifted the language for instruction No. 32 from a decision of this court in *Wehmeier v. UNR Industries, Inc.* (1991), 213 Ill. App. 3d 6, 28, 572 N.E.2d 320, 335. The Supreme Court of Illinois has written that the " 'practice of lifting sentences from court opinions and converting them into instructions *** is not a good one, as it often leads to serious error.' " (*Kingston v. Turner*

(1987), 115 Ill. 2d 445, 460, 505 N.E.2d 320, 326, quoting *De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 76, 404 N.E.2d 564, 573.) Further, as we stated earlier, the determination of whether to give an instruction is a matter within the discretion of the trial court. (*Yamnitz*, 251 Ill. App. 3d at 252, 621 N.E.2d at 1051.) Thus, we hold that the trial court did not abuse its discretion by refusing to give defendants' non-IPI instructions on proximate cause.·

## C. *The Trial Court's Evidentiary Rulings*

Defendants next argue that the trial court erred in several of its evidentiary rulings. First, defendants argue that the court erred in permitting Dr. Rosenberg to testify that Wilkerson's cancer was caused by exposure to asbestos. Second, PC argues that the court erred by allowing in the deposition testimony of Sindelar over a hearsay objection. Third, PC argues that the court erred by excluding the deposition testimony of Roy Fuhs and Robert Buckley. Finally, PC argues that the court erred in disallowing evidence of Wilkerson's exposure to asbestos-containing products not manufactured by PC.

A trial court has great discretion regarding evidentiary matters, and a court of review will not reverse the trial court's decision on an evidentiary matter absent a clear abuse of that discretion. (*Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 68, 573 N.E.2d 279, 292.) Based on the record in the present case, we do not find that the trial court abused its discretion regarding any of defendants' claims.

## 1. Dr. Rosenberg's Causation Opinion

Defendants first argue that the trial court erred in permitting Wilkerson's consulting physician, Dr. Rosenberg, to testify that Wilkerson's lung cancer was caused by exposure to asbestos because such testimony violated Supreme Court Rule 220 (134 Ill. 2d R. 220). Defendants assert that, in view of the absence of any mention of asbestos in Dr. Rosenberg's consultation notes on Wilkerson and the likelihood that he developed this opinion in anticipation of litigation, his causation testimony constituted classic expert testimony requiring disclosure under Rule 220. In response, plaintiff argues that, as a treating physician, Dr. Rosenberg was not a retained expert requiring disclosure under Rule 220 and that defendants were not surprised by Dr. Rosenberg's causation testimony.

Although we need not address this issue on the merits, we note that whether Dr. Rosenberg's causation testimony required disclosure under Rule 220 is a close question and illustrates precisely why, effective January 1, 1996, the supreme court eliminated Rule 220 (134 Ill. 2d R. 220) and amended discovery rules to require disclosure of

*all* opinion testimony prior to trial (166 Ill. 2d R. 213).

Situations like the one in this case, which consume the time and effort of both judges and lawyers, are exactly what prompted the elimination of Rule 220 and the amendment of the discovery rules.

### 2. Deposition Testimony of Robert Sindelar

PC next argues that the trial court erred by allowing in the deposition testimony of Sindelar concerning the use of Unibestos at the Cordova power plant because the testimony was hearsay. PC contends that although PC was represented at Sindelar's 1983 deposition, it did not have the same or similar motive for cross-examining Sindelar during that deposition as it would have had during this proceeding. We disagree.

Before prior testimony of an absent witness can be admitted as an exception to the hearsay rule, there must be a showing that in the prior proceeding the matters in issue and the parties were essentially the same. (*George v. Moorhead* (1948), 399 Ill. 497, 501, 78 N.E.2d 216, 218.) In *Laboy v. Industrial Comm'n* (1978), 74 Ill. 2d 18, 22, 383 N.E.2d 954, 956, the supreme court emphasized the importance of the party against whom the testimony is now offered to have had the right and opportunity to cross-examine the witness in the prior proceeding.

In the present case, the matters in issue are essentially the same as those in the prior proceeding, in which Sindelar was the plaintiff in an asbestos-related suit against PC. In his deposition, Sindelar testified as to when he worked at the Cordova power plant and that he used Unibestos as an insulator at Cordova. In the present case, plaintiff used Sindelar's deposition testimony to show that Sindelar was an insulator at Cordova during parts of 1970-72 and that he recalled using Unibestos at Cordova. Further, as a defendant in the prior proceeding, PC had the right and opportunity to cross-examine Sindelar during the 1983 deposition regarding those matters. Thus, the trial court did not err in allowing Sindelar's deposition testimony into evidence.

### 3. Deposition Testimony of Fuhs and Buckley

PC next argues that the trial court erred in refusing to allow into evidence the deposition testimony of Fuhs and Buckley, deceased employees of PC, concerning when PC stopped manufacturing Unibestos products and whether PC placed warnings on Unibestos containers. PC contends that even though plaintiff was not a party to the prior proceedings, the plaintiffs in those proceedings had the same motive

and opportunity as plaintiff would have had in the prior proceedings. We disagree.

As we stated earlier, the supreme court has placed much emphasis on the party against whom the testimony is now offered having had the right and "full opportunity to test the veracity of the testimony through cross-examination." (*Laboy*, 74 Ill. 2d at 22, 383 N.E.2d at 956.) In the present case, plaintiff did not have the right and full opportunity to test the veracity of the testimony of Fuhs or Buckley through cross-examination during the prior proceedings. Thus, we hold that the trial court did not abuse its discretion by disallowing the deposition testimony of Fuhs and Buckley.

### 4. Evidence of Exposure to Other Manufacturers' Asbestos-Containing Products

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

### D. *Judgment N.O.V. and Directed Verdict*

▮ The standard for granting a directed verdict is the same as the standard for granting a judgment *n.o.v.* A trial court should enter a directed verdict or judgment *n.o.v.* only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Based on our review of the record in this case, we conclude that the evidence supports the jury's verdict under this standard. The trial court therefore did not err in denying defendants' motions for judgment *n.o.v.* or directed verdict.

## IV. CONCLUSION

For the reasons stated, we reverse and remand for a new trial consistent with the views expressed herein.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE McCULLOUGH, dissenting:
I disagree with the majority that it was reversible error for the trial court to give the adverse inference (missing witness or evidence) instruction.

Plaintiff argues that defendants would have produced the witness

or evidence if the testimony was favorable. Defendants' reason for not calling the witnesses was based upon the premise that the evidence would be cumulative. It is not clear whether the testimony and evidence would be cumulative.

Plaintiff's exhibit No. 56 listed the two medical experts defendants had retained to present opinion testimony at trial. The exhibit suggested that Dr. Weill would testify regarding the pathology and epidemiology of lung disease, the effects of cigarette smoking and the cause of Wilkerson's lung cancer. Plaintiffs' counsel argued defendants talked throughout the trial concerning scheduling problems to have the doctors present. OCF's counsel also suggested "scheduling difficulties" and "considering that neither Dr. Skillrud and Dr. Weill were available on Friday and that would take me into Monday that the cumulativeness of their testimony made it possible to skip calling them."

The "clear abuse" standard set forth in *Johnson* and in *Betts* (225 Ill. App. 3d at 901, 588 N.E.2d at 1206) did not make it reversible error to give or refuse to give the missing evidence and/or witness instruction. The cases cited in "Notes on Use" in IPI Civil 3d No. 5.01 were affirmances of the trial court in its decision to give, or refuse to give, the instruction. IPI Civil 3d No. 5.01, Notes on Use, at 5—3.

In *Johnson*, *Chiricosta*, and *Betts*, cited by the majority, the appellate courts affirmed the ruling of the trial courts. In *Taylor*, neither the appellate court nor the supreme court decided that the error, if any, in giving the instruction, was in itself reversible error. In discussing Supreme Court Rule 220, the supreme court stated:

"The rule further provides that experts will not be allowed to testify in a manner inconsistent with their pretrial disclosures. The committee comments to this paragraph point out that '[t]he purpose of this rule is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries.' 134 Ill. 2d R. 220(d), Committee Comments, at 182.

The goal is that a party will be able to rely on his adversary's expressed intention to call the experts he discloses. Thus, a missing-witness instruction is appropriate if such an expert is *not* abandoned and is not called. Thus, we rule that a party may give notice of abandonment and avoid the missing-witness instruction. The notice must be given in reasonable time prior to trial." (Emphasis in original.) *Taylor*, 162 Ill. 2d at 98, 642 N.E.2d at 469-70.

The supreme court and appellate court also noted in *Taylor* that the plaintiff had given notice, approximately 19 months before trial, that the expert witness would not be called. Abandonment discussed

1038

in *Taylor* is not an issue or argument in this case. *Taylor* is important, however, because of reference to the missing witness instruction, and because the supreme court did not determine whether there was error in giving the instruction.

It was not an abuse of discretion to give the adverse inference instruction. It was also not reversible error because the trial court refused to give apportionment of responsibility instructions and a contribution verdict form.

I would affirm the trial court.