JOHN HILLS *et al.*, Indiv. and as Parents and Best Friends of John Hills, a Minor, Plaintiffs-Appellees, v. BRIDGEVIEW LITTLE LEAGUE ASSOCIATION *et al.*, Defendants-Appellants (George T. Loy, Sr., *et al.*, Defendants).

First District (1st Division) Nos. 1—98—0620, 1—98—0630 cons.

Opinion filed June 14, 1999.

14

Michael Resis and James W. Fessler, both of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for appellant Bridgeview Little League Association.

Dan L. Boho and Bruce L. Carmen, both of Hinshaw & Culbertson, of Chicago, for appellant Justice Willow Springs Little League.

Illinois Trial Lawyers Association (Bruce R. Pfaff and Mark A. Rouleau, of counsel), and James H. Wolf and James M. Wolf, both of Wolf & Tennant, both of Chicago, for appellees.

Thomas H. Fegan, of Johnson & Bell, Ltd., of Chicago, for *amicus curiae* Little League, Inc.

JUSTICE TULLY delivered the opinion of the court:

Plaintiffs, John and Patricia Hills, brought an action against defendants, Bridgeview Little League Association (Bridgeview) and Justice Willow Springs Little League (Justice), seeking damages for John Hills' personal injuries and Patricia Hills' loss of consortium. Plaintiffs' claims arose from the remaining defendants' beating of John Hills during a little league tournament that Justice organized. The jury found in plaintiffs' favor, awarding John Hills $632,710 and Patricia Hills $125,000. In addition, the jury apportioned fault equally to Bridgeview and Justice. The trial court denied Bridgeview's and Justice's requests for posttrial relief. Bridgeview and Justice appeal. Plaintiffs sued the Loys, who are not parties to this appeal, for intentional torts. This court has jurisdiction pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

We affirm for the following reasons.

The relevant facts are as follows. John Hills and his team were members of the Lemont Little League. By invitation, they participated

in a tournament that Justice organized, paying an entrance fee and providing a surety bond to Justice. Justice owned the field on which the teams played. On July 30, 1990, Hills' team played one of Bridgeview's teams. Hills was the first base coach for his team. On Bridgeview's team, Ted Loy, the volunteer manager since 1989, had chosen his brother George Loy, Sr., and George Loy, Jr., as his coaches. Ted Loy was the official Bridgeview representative at the Justice tournament on July 30, 1990, because none of the Bridgeview board members were there. Bridgeview never had any evidence that Ted Loy had fought with anyone during any little league games.

During the first inning, the umpire called a conference because one of the Bridgeview coaches disagreed with the umpire's calls. Starting in the third inning, George Loy, Sr., verbally threatened Hills while Hills was coaching at first base. At one point, he came out of the dugout and stood about five feet from Hills, called him a "mother f-----," and said that he was "going to kick his ass." George Loy, Sr., said, "this is for what happened earlier during the first inning." Hills was not worried about Loy because the Bridgeview manager and the Justice umpires were on the field.

According to Rebecca Deverdier, Loy's behavior worsened during the last several innings. In the sixth inning, Loy ran within three feet of Hills' back, flailing his fist and arms. At that point, Patricia Hills asked Michael Putrow, her nephew, to go to first base to see what was happening. Putrow saw Loy acting in a more volatile manner and running within three feet of Hills. Ted Loy was in the dugout the whole time and never did anything to restrain George Loy, Sr.

At the end of the sixth inning, Loy attacked Hills from behind when Hills bent over. Loy beat and kicked Hills. Ted and George Loy, Jr., did nothing to restrain George Loy, Sr. Patricia Hills ran to the first base area and screamed for help. Neither the first base umpire nor the home plate umpire helped John Hills. The Justice announcer did not make any announcements regarding the attack and did not help Hills. In addition, none of the Loys did anything to restrain each other throughout the attack. In fact, Ted Loy came out of the dugout and kicked John Hills about 10 to 15 times. George Loy, Jr., then joined the attack.

The attack stopped for about one minute when Lemont's third base coach, George Keeler, separated George Loy, Sr., from Hills. George Loy, Sr., broke away from Keeler and hit Hills again with his fists, breaking Hills' nose. Scott Van Wagner, an umpire, picked up George Loy, Sr., and carried him to the dugout.

The fighting stopped again for about one minute. George Loy, Jr., who was 16 years old, broke the lull. He beat Hills with a baseball bat

for about 10 to 15 minutes. Patricia Hills ran to the concession stand to ask for help. Someone called the police, who arrived within five minutes.

The following issues are presented on appeal. Bridgeview and Justice contend that the trial court erred in denying their motions for judgment notwithstanding the verdict or for a new trial and that the court erred in allowing the jury to apportion fault between Bridgeview and Justice and not to the Loys. Justice additionally argues that the court erroneously struck its Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1—101 *et seq.* (West 1996)) defenses.

In the instant case, defendants point out the difference between moral and legal duties. Mindful of that difference, we note that this case presents us with the question of where to draw the line between the two. It involves a unique and disturbing set of facts, according to which plaintiffs alleged that defendants acted negligently in failing to supervise and control three individuals' unconscionable behavior. As we will discuss, our careful review of the record shows that the jury's verdict was not against the manifest weight of the evidence and that the trial court did not abuse its discretion in denying defendants' motions for judgment notwithstanding the verdict or for a new trial. Moreover, we do not find that the trial court erred in allowing the jury to apportion fault only between Bridgeview and Justice, or in striking Justice's Tort Immunity Act defenses. We will review each defendant's issues on appeal separately.

I. Bridgeview Little League Association

Bridgeview first contends that it was entitled to judgment notwithstanding the verdict on the negligent supervision counts. According to Bridgeview, the attack was not reasonably foreseeable because there was no evidence that it knew or should have known that the Loys had propensities for violence. Bridgeview also argues that because none of its board members were present at the game, it did not have the opportunity or the knowledge necessary to exercise control over the Loys.

Plaintiffs' complaint contained separate counts against defendants—some for negligent supervision and some under the theory of *respondeat superior*. In their negligent supervision counts against Bridgeview, which involve a direct liability theory, plaintiffs alleged in pertinent part that Bridgeview "had a duty to exercise due care and control over the individuals it allowed to be coaches of the little league team." In addition, plaintiffs alleged that Bridgeview was "negligent by failing to supervise and control their managers and coaches, and by

[the] failure of the managers and coaches to supervise and control each other."

The trial court instructed the jury that Bridgeview "was negligent by virtue of the failure of its manager to supervise and control its coaches, and/or by the failure of the coaches to control each other when the manager and coaches knew, or in the exercise of ordinary care should have known, that such failure would cause harm to" John Hills. Moreover, in its order denying defendants' motions for posttrial relief, the trial court repeated that plaintiffs alleged that Bridgeview was liable for its agents'/servants' negligence in failing to supervise and control each other.[1] The *respondeat superior* counts involved a vicarious liability theory. Plaintiffs alleged in those counts that Bridgeview was responsible and liable for the acts of the Loys, its agents.

■ A trial court should grant a motion for judgment notwithstanding the verdict only if the evidence, when viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 679 N.E.2d 1202 (1997). However, a trial court should set aside the jury's verdict and grant a new trial only when the verdict is against the manifest weight of the evidence (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967)) or is " 'unreasonable, arbitrary and not based upon any of the evidence' " (*Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512 (1992), quoting *Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1089 (1990)). We will not reverse a trial court's denial of a motion for a new trial absent a clear abuse of its discretion. *Snover v. McGraw*, 172 Ill. 2d 438, 667 N.E.2d 1310 (1996). Furthermore, we may affirm a correct decision for any reason in the record regardless of the trial court's basis for the decision. *Joseph v. Collis*, 272 Ill. App. 3d 200, 649 N.E.2d 964 (1995).

■ "Negligent supervision alleges that: (1) an employer had a duty to supervise its employees, (2) the employer negligently supervised an employee, and (3) such negligence proximately caused the plaintiff's injuries." *Van Horne v. Muller*, 294 Ill. App. 3d 649, 657, 691 N.E.2d 74, 79 (1998), *modified on other grounds*, 185 Ill. 2d 299, 705 N.E.2d 898 (1998).

■ Whether a duty exists is a question of law for the trial court. *Doe v. McKay*, 183 Ill. 2d 272, 700 N.E.2d 1018 (1998). Generally, one

---

[1]Plaintiffs and the trial court used the term *respondeat superior* in their description of all the alleged liability, which we suggest might have served as a source of confusion in this case. Regardless, our review of the record reflects separate counts for negligent supervision and *respondeat superior*.

has no duty to control the conduct of another to prevent him from causing harm to a third party. *Geimer v. Chicago Park District*, 272 Ill. App. 3d 629, 650 N.E.2d 585 (1995). Therefore, a landowner generally has no duty to protect others from criminal acts by third persons. *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 650 N.W.2d 652 (1995). An exception is recognized when the defendant and the wrongdoer have a "special relationship" such as parent and minor child, master and servant, possessor of land and licensee, or where a person takes charge of a person with dangerous propensities. *Geimer*, 272 Ill. App. 3d at 632, 650 N.E.2d at 588, citing Restatement (Second) of Torts §§ 316 through 319 (1965). An exception is also recognized when the defendant and the injured person have a "special relationship" such as common carrier and passenger, innkeeper and guest, voluntary custodian and protectee, or business invitor and invitee. *Geimer*, 272 Ill. App. 3d at 632, 650 N.E.2d at 588, citing Restatement (Second) of Torts §§ 314A, 315, Comment (1965). If there is a special relationship, the landowner must have superior knowledge of the danger in order for a duty to exist. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150 (1992). Moreover, "[i]n deciding whether a duty exists in a particular case, a court will consider the foreseeability of the plaintiff's injury, the likelihood of the occurrence, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Doe*, 183 Ill. 2d at 278, 700 N.E.2d at 1021. Foreseeability determinations are based on the facts and circumstances of each case, and the act must have been reasonably foreseeable. *Lutz v. Goodlife Entertainment, Inc.*, 208 Ill. App. 3d 565, 567 N.E.2d 477 (1990).

■ The issues of breach of the duty and proximate cause of the injury are questions of fact for the jury. *Benner v. Bell*, 236 Ill. App. 3d 761, 602 N.E.2d 896 (1992). In order to show proximate cause, the plaintiff must, with reasonable certainty, establish that the defendant's alleged acts or omissions caused the plaintiff's injury.

■ Our review of the record shows that the trial court did not abuse its discretion in denying Bridgeview's motion for judgment notwithstanding the verdict or for a new trial. In accordance with section 317 of the Restatement (Second) of Torts, a master and servant relationship existed between Bridgeview and the Loys. Section 317 provides in relevant part that a master has a duty to exercise reasonable care to control his servant while acting outside the scope of his employment to prevent him from intentionally harming others. The master has such a duty if the servant is on the master's premises or is on property the servant is privileged to enter only as his servant or is

using the master's chattel. In addition, the master must know or have reason to know that he is able to control the servant, and knows or should know of the necessity and opportunity for using such control. Restatement (Second) of Torts § 317 (1965).

■ At trial, Bridgeview admitted that Ted Loy, as a manager, was its agent and that Ted Loy officially represented Bridgeview at the game because there were no Bridgeview board members present. In addition, George Loy, Sr., and George Loy, Jr., were Bridgeview's agents. Ted Loy, acting with Bridgeview's authority, selected them as the team's coaches. The Loys' volunteer status does not affect their status as Bridgeview's agents and servants. See Restatement (Second) of Agency § 725 (1965) (one who volunteers services without an agreement for an expectation of reward may be a servant of the one accepting such services); see also *Morgan v. Veterans of Foreign Wars*, 206 Ill. App. 3d 569, 565 N.E.2d 73 (1990) (for there to be a master/servant relationship between an organization and a volunteer, the organization must consent to receive the volunteer's services as a master, and must control or have the right to control the servant). Also, based on the facts and circumstances of the case, John Hills' injuries from the continued beating were reasonably foreseeable to Ted Loy, once the beatings began and two one-minute lulls followed. The magnitude of the burden to Ted Loy of guarding against the beating was low. His brother initiated the beating. Ted Loy could have attempted to verbally or physically restrain his brother or he could have called the police. The consequences of placing such a burden on defendant would not have been onerous. Ted Loy, as Bridgeview's sole representative, breached the duty to John Hills. The record shows that Ted Loy did nothing to stop the attack once it began. Instead, he joined in the attack himself, kicking John Hills 10 to 15 times. Finally, the record reflects that Bridgeview's breach of its duty proximately caused John Hills' injuries. Plaintiffs established with more than reasonable certainty at trial that because Ted Loy failed to control the other Loys, John Hills suffered injuries from their beating of him. In sum, the trial court did not abuse its discretion in denying Bridgeview's motion for judgment notwithstanding the verdict or for a new trial.

Bridgeview argues in the alternative that the jury verdicts, the answers to the special interrogatories, and the judgment entered were against the manifest weight of the evidence. We reject this alternative contention, for the reasons set forth above.

■ ■ Finally, Bridgeview asserts that the trial court erred under section 2—1117 of the Code of Civil Procedure in refusing to permit the jury to allocate fault among all defendants in order to prevent

Bridgeview from paying more than its *pro rata* share. Section 2—1117 provides:

"Except as provided in Section 2—1118, in actions on account of bodily injury or death *** based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third[-]party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages." 735 ILCS 5/2—1117 (West 1994).

The giving of a jury instruction is within the trial court's discretion, and we will disturb the court's decision only when it clearly abused its discretion. *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 659 N.E.2d 979 (1995).

█ According to Bridgeview, section 2—1117 required the trial court to have allowed the jury to apportion fault among the Loys as well. Plaintiffs counter that the section distinguishes between actions based on negligence and those based on intentional torts, and therefore the trial court properly excluded the Loys from the joint and several liability determination. We agree with plaintiffs, and do not find that the trial court abused its discretion in excluding the Loys from that determination. Plaintiffs sued the Loys for intentional torts, not for negligence. Illinois courts have suggested that if the legislature had intended to allow apportionment under section 2—1117 for all tort actions, it would have used corresponding specific language. See *Lilly v. Marcal Rope & Rigging, Inc.*, 289 Ill. App. 3d 1105, 1107, 682 N.E.2d 481, 483 (1997); see also *Woods v. Cole*, 181 Ill. 2d 512, 519, 693 N.E.2d 333, 337 (1998). In conclusion, we do not find that the trial court erred in excluding the Loys from the jury's allocation of fault.

### II. Justice Willow Springs Little League

█ On appeal, Justice argues that the trial court should have granted its motion for judgment notwithstanding the verdict or for a new trial because it had no duty to protect John Hills from the attack. Our review of the record shows that the trial court did not abuse its discretion in denying Justice's motion.

First, the evidence showed that Justice had a business invitor/invitee relationship with John Hills. "A person is a business invitee on the land of another if (1) the person enters by express or implied

invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit." *Hill v. Charlie Club, Inc.*, 279 Ill. App. 3d 754, 759, 665 N.E.2d 321, 325 (1996). Justice owned the baseball field where the tournament was played, and it invited Hills' team to play. Hills paid a fee to participate and also provided Justice with a surety bond. A Justice board member testified that the purpose of the tournament was to make money and that if an invitee did not pay the required fee, it would not be allowed to participate.

Also, the record shows that it was reasonably foreseeable for Justice that the attacks, after they began and two one-minute breaks occurred, would continue.[2] "A criminal attack by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun." *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439, 443, 670 N.E.2d 768, 770 (1996). Witnesses testified that the beatings, which were severe, continued for up to 15 minutes. In addition, there were two one-minute breaks in the attack. The first one occurred when a Lemont coach restrained George Loy, Sr., who broke free from the coach and continued beating Hills. The second one happened when Scott Van Wagner, a Justice umpire, picked up George Loy, Sr., and carried him to the dugout. The evidence showed that Justice's representatives—a game announcer (a Justice board member) and two umpires—had an unobstructed view of the entire attack. Although Van Wagner restrained George Loy, Sr., Justice did nothing else to stop the continued attack upon John Hills and therefore did not exercise reasonable care to protect Hills from the danger. Moreover, the evidence supported the jury's finding that Justice had knowledge of the danger before the attack. Once the beating began, the game announcer, who was in an elevated booth, and the umpires on the field had unobstructed views of the beating.

Also, the evidence showed that Justice breached its duty of care and that its breach was a proximate cause of John Hills' injuries. Aside from Van Wagner's testimony that he restrained George Loy, Sr., there was no evidence that Justice did anything to stop the attack. Moreover, the evidence supported the trial court's conclusion that the-

---

[2]The jury answered "yes" to the following special interrogatory: "Did [Justice], through any of its agents, know, or should it in the exercise of ordinary care have known, that the initial attack and/or further attacks would occur[?]"

burden on Justice to protect John Hills was minimal. The game announcer, who was in an elevated booth, or one of the umpires could have simply called the police once the threat of attack began. Justice's failure to act reasonably allowed the beatings to occur and therefore was a proximate cause of John Hills' injuries.

■ Justice further contends that the trial court erred in ruling that the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1996)) did not apply to Justice. The trial court rejected Justice's argument that the Act applied in its pretrial motion for summary judgment and in its posttrial motion. The Act makes "[a]ny defense or immunity, common law or statutory, [which is] available to any private person *** available to local public entities and public employees." 745 ILCS 10/1—101.1(b) (West 1996). Its purpose is "to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1—101.1(a) (West 1996). Section 3—108(a) of the Act completely immunizes a local public entity from liability for " 'failure to supervise an activity on or the use of any public property.' " *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388, 665 N.E.2d 808 (1996), quoting 745 ILCS 10/3—108(a) (West 1996). According to Justice, it is covered by the Act because it fits one of the definitions of a "local public entity," which is any "not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1—206 (West 1996). We disagree with Justice and find no trial court error.

First, the Act's purpose is to protect local public entities from liability "arising from the operation of government." As a not-for-profit corporation and little league association, Justice did not show that its actions arose from the operation of government. Second, Justice has not persuasively argued that it conducts public business under the Act. In support of its contention, Justice relies upon *McQueen v. Shelby County*, 730 F. Supp. 1449 (C.D. Ill. 1990), and *Corral v. Chicago Park District*, 277 Ill. App. 3d 357, 660 N.E.2d 89 (1995). Each of those cases is distinguishable from the present case. In *McQueen*, the district court found that a community mental health facility, which received 90% of its financing from state and local sources, was a not-for-profit corporation "organized for the purpose of conducting public business." In *Corral*, the appellate court applied the Tort Immunity Act to the Lincoln Park Zoo, which was run by the Chicago Park District, a local public entity. In this case, Justice has presented no evidence (and does not assert) that it is funded by state or local sources, that it is run by state or village government, or that it is a part of a governmen-

tal unit. "[T]o conduct 'public business'[3] under the Act, a corporation must pursue an activity that benefits the entire community without limitation." *O'Melia v. Lake Forest Symphony Ass'n*, 303 Ill. App. 3d 825, 828, 708 N.E.2d 1263, 1265 (1999). "In addition, the phrase 'public business' is also today commonly understood to mean the business of the government." *O'Melia*, 303 Ill. App. 3d at 828, 708 N.E.2d at 1265. Unlike in *Corral*, where the park district was a sub-unit of the City of Chicago, Justice is not a sub-unit of the Village of Justice. According to Justice's answer to plaintiffs' complaint, it was "engaged in the operation of a little league and an annual fundraising tournament." Furthermore, Justice owned the baseball field upon which the teams played. Therefore, the trial court did not err in finding that Justice did not conduct "public business."

■ Finally, Justice argues that the trial court erred in its application of section 2—1117 of the Code of Civil Procedure. According to Justice, the trial court should have allowed the jury to include the Loys in apportioning fault. As we have discussed, we reject that argument.

In light of the foregoing, we affirm the judgment of the circuit court.

Affirmed.

O'MARA FROSSARD and GALLAGHER, JJ., concur.

---

[3]"Public" is defined as:

"Pertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. Open to all; notorious. Common to all or many; general; open to common use. Belonging to the people at large; relating to or affecting the whole people of a state, nation, or community; not limited or restricted to any particular class of the community." Black's Law Dictionary 1227 (6th ed. 1990).

"Business" is defined as an "[a]ctivity or enterprise for gain, benefit, advantage or livelihood." Black's Law Dictionary 198 (6th ed. 1990).